APPEAL,GITMO,HABEAS,STAYED,TYPE–G

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:17–cv–01928–EGS</u>
### *Internal Use Only*

ABDULRAZZAQ v. TRUMP et al

Assigned to: Judge Emmet G. Sullivan

 Case:  1:09–cv–01462–EGS

 Related Case:  1:25–cv–00015–EGS

Cause: 28:2241 Petition for Writ of Habeas Corpus (federa

Date Filed: 09/21/2017

Jury Demand: None

Nature of Suit: 530 Prisoner Petition: General (Habeas Corpus)

Jurisdiction: U.S. Government Defendant

**Petitioner**

| | | |
|---|---|---|
| **NASHWAN AL–RAMER ABDULRAZZAQ** | represented by | **Benjamin C. McMurray** |

UTAH FEDERAL DEFENDER OFFICE
District of Utah
46 W Broadway
Suite 110
Salt Lake City, UT 84101
801–524–4010
Fax: 801–524–4060
Email: <u>benji_mcmurray@fd.org</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brent Nelson Rushforth**
1112 Cripplegate Road
11112 Cripplegate Road
Potomac, MD 20854
301–943–7977
Email: <u>brentrushforth@icloud.com</u>
*TERMINATED: 08/11/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Keith Wilson**
UTAH FEDERAL DEFENDER OFFICE
District of Utah
46 W Broadway
Suite 110
Salt Lake City, UT 84101
801–524–4010
Fax: 801–524–4060
Email: <u>scott_wilson@fd.org</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Marc Thurschwell**
MILITARY COMMISSIONS DEFENSE
ORGANIZATION

1

Military Commissions Defense
Organization
2031 Locust Street
Suite #902
Philadelphhia, PA 19103
202–642–9686
Email: adam.m.thurschwell.civ@mail.mil
*TERMINATED: 08/11/2023*
*ATTORNEY TO BE NOTICED*

**Meghan Suzanne Skelton**
SKELTONLAW, LLC
P.O. Box 308
Cabin John, MD 20818
240–425–2280
Email: meghan@skelton.law
*ATTORNEY TO BE NOTICED*

**Robert Louis Palmer**
LAW OFFICE OF ROBERT L. PALMER
1981 Mount Avenue
Yountville, CA 94599
213–254–8295
Email: rlp378@icloud.com
*TERMINATED: 08/11/2023*

**Susan Amelia Hensler**
U.S. DEPARTMENT OF DEFENSE
Military Commissions Defense
Organization
1620 Defense Pentagon
Washington, DC 20301–1620
(703) 695–4801
Email: susan.a.hensler.civ@mail.mil
*ATTORNEY TO BE NOTICED*

**Tiffany Heavlin Riffer**
FAEGRE DRINKER BIDDLE & REATH
LLP
1050 K Street, NW
Suite 400
Washington, DC 20001
202–312–7065
Email: tiffany.riffer@faegredrinker.com
*TERMINATED: 04/20/2018*

V.

**Respondent**

**DONALD J. TRUMP**                represented by   **Julia Alexandra Heiman**
*President*                                          U.S. DEPARTMENT OF JUSTICE

Poc Agostinho, Jean
1100 L St., N.W.
Washington, DC 20530
202–616–8480
Email: julia.heiman@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald James Wiltsie**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 307–1401
Fax: (202) 616–8470
Email: ronald.wiltsie@usdoj.gov
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Terry Marcus Henry**
DOJ–CIV
Civil Division, Federal Programs Branch
1100 L Street, NW
Room 7500
Washington, DC 20530
202–514–4107
Email: terry.henry@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew I. Warden**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 616–5084
Fax: (202) 616–8470
Email: andrew.warden@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Respondent**

| | | |
|---|---|---|
| **JAMES N. MATTIS**<br>*Secretary of Defense* | represented by | **Julia Alexandra Heiman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Ronald James Wiltsie**<br>(See above for address)<br>*TERMINATED: 01/10/2025*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Terry Marcus Henry**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew I. Warden**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**HARVEY RISHIKOF**                    represented by    **Julia Alexandra Heiman**
*Convening Authority for Military*                              (See above for address)
*Commissions*                                                            *LEAD ATTORNEY*
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Ronald James Wiltsie**
                                                                                (See above for address)
                                                                                *TERMINATED: 01/10/2025*
                                                                                *LEAD ATTORNEY*
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Terry Marcus Henry**
                                                                                (See above for address)
                                                                                *LEAD ATTORNEY*
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Andrew I. Warden**
                                                                                (See above for address)
                                                                                *ATTORNEY TO BE NOTICED*

**Respondent**

**DAVID CULPEPPER**                    represented by    **Julia Alexandra Heiman**
*Captain – Base Commander, U.S. Naval*                      (See above for address)
*Station, Guantanamo Bay*                                            *LEAD ATTORNEY*
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Ronald James Wiltsie**
                                                                                (See above for address)
                                                                                *TERMINATED: 01/10/2025*
                                                                                *LEAD ATTORNEY*
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Terry Marcus Henry**
                                                                                (See above for address)
                                                                                *LEAD ATTORNEY*
                                                                                *ATTORNEY TO BE NOTICED*

                                                                                **Andrew I. Warden**
                                                                                (See above for address)
                                                                                *ATTORNEY TO BE NOTICED*

4

**Respondent**

| | |
|---|---|
| **EDWARD B. CASHMAN**<br>*Rear Admiral – Commander Joint*<br>*Detention Force, U.S. Naval Station,*<br>*Guantanamo Bay* | represented by **Julia Alexandra Heiman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | **Ronald James Wiltsie**<br>(See above for address)<br>*TERMINATED: 01/10/2025*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | **Terry Marcus Henry**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | **Andrew I. Warden**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 09/21/2017 | 1 | PETITION for Writ of Habeas Corpus ( Filing fee $ 5 receipt number 4616087272.) filed by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet)(jf) (Entered: 09/22/2017) |
| 09/21/2017 | 2 | NOTICE OF RELATED CASE by NASHWAN AL–RAMER ABDULRAZZAQ. Case related to Case No. 09–1462. (jf) (Entered: 09/22/2017) |
| 09/22/2017 | 3 | NOTICE of Appearance by Tiffany Heavlin on behalf of NASHWAN AL–RAMER ABDULRAZZAQ (Heavlin, Tiffany) (Entered: 09/22/2017) |
| 09/22/2017 | 4 | ERRATA *Correcting Initial Case Caption Pursuant to Local Rule 5.1(c) and 11.1* by NASHWAN AL–RAMER ABDULRAZZAQ 1 Petition for Writ of Habeas Corpus filed by NASHWAN AL–RAMER ABDULRAZZAQ. (Heavlin, Tiffany) (Entered: 09/22/2017) |
| 09/22/2017 | 5 | NOTICE of Appearance by Brent Nelson Rushforth on behalf of NASHWAN AL–RAMER ABDULRAZZAQ (Rushforth, Brent) (Entered: 09/22/2017) |
| 09/22/2017 | 6 | REQUEST FOR SUMMONS TO ISSUE *directed to Donald J. Trump, James N. Mattis, Harvey Rishikof, Captain David Culpepper, Rear Admiral Edward B. Cashman (Respondents) and Channing D. Phillips (U.S. Attorney for the District of Columbia)* filed by NASHWAN AL–RAMER ABDULRAZZAQ.(Rushforth, Brent) (Entered: 09/22/2017) |
| 09/25/2017 | 7 | SUMMONS (6) Issued Electronically as to EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP, and U.S. Attorney. (znmw) (Entered: 09/25/2017) |
| 09/26/2017 | 8 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 9/26/2017. |

| | | |
|---|---|---|
| | | Answer due for ALL FEDERAL DEFENDANTS by 11/25/2017. (Rushforth, Brent) (Entered: 09/26/2017) |
| 09/27/2017 | 9 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert L. Palmer, :Firm– McKool Smith Hennigan, :Address– 300 South Grand Avenue, Suite 2900, Los Angeles, CA 90071. Phone No. – 213–694–1149. Fax No. – 213–694–1234 Filing fee $ 100, receipt number 0090–5134577. Fee Status: Fee Paid. by NASHWAN AL–RAMER ABDULRAZZAQ (Attachments: # 1 Exhibit A – Declaration of Robert L. Palmer, # 2 Text of Proposed Order)(Rushforth, Brent) (Entered: 09/27/2017) |
| 09/28/2017 | 10 | MOTION for Preliminary Injunction *and Exhibit 1* by NASHWAN AL–RAMER ABDULRAZZAQ (Attachments: # 1 Memorandum in Support Points and Authorities and Exhibits A–B, # 2 Declaration of Aimee M. Cooper and Exhibits A–K, # 3 Declaration of James Cobey, M.D. and 1–5, # 4 Certificate of Service)(Rushforth, Brent) (Entered: 09/28/2017) |
| 09/29/2017 | 11 | MINUTE ORDER. In view of 10 petitioner's motion for preliminary injunction, plaintiffs are HEREBY DIRECTED to contact forthwith the Department of Justice to identify counsel for the respondent. The parties shall thereafter submit, by no later than 5:00 pm on October 2, 2017, a joint status report proposing a date and time for a status conference to be held by no later than seven calendar days from the date of the filing of the motion for preliminary injunction. Signed by Judge Emmet G. Sullivan on 9/29/2017. (lcegs1) (Entered: 09/29/2017) |
| 10/02/2017 | | Set/Reset Deadlines: Joint Status Report due by 10/2/2017 (mac) (Entered: 10/02/2017) |
| 10/02/2017 | 12 | Joint STATUS REPORT by NASHWAN AL–RAMER ABDULRAZZAQ. (Rushforth, Brent) (Entered: 10/02/2017) |
| 10/02/2017 | | MINUTE ORDER granting 9 Motion to Appear Pro Hac Vice. Robert L. Palmer is hereby admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on 10/2/2017. (lcegs1) (Entered: 10/02/2017) |
| 10/02/2017 | | MINUTE ORDER. In view of 12 joint status report, The Court hereby adopts the TS/SCI Protective Order issued by Judge Hogan in In re Guantanamo Bay Detainee Litigation, Misc. No. 08–442, Dkt No. 1481 as amended in Dkt No. 1496. SO ORDERED. Signed by Judge Emmet G. Sullivan on 10/2/2017. (lcegs1) Modified to add event title on 10/3/2017 (znmw). (Entered: 10/02/2017) |
| 10/02/2017 | | MINUTE ORDER. In view of 12 joint status report, respondent shall file its opposition to 10 motion for preliminary injunction by no later than October 6, 2017. Petitioner shall file his reply by no later than October 9, 2017. A motion hearing shall take place on October 13, 2017 at 11:00 am in Courtroom 24A. By no later than 5:00 pm on October 11, 2017, the parties shall file a joint report informing the Court of whether any portion of the motion hearing will need to be sealed. Signed by Judge Emmet G. Sullivan on 10/2/2017. (lcegs1) (Entered: 10/02/2017) |
| 10/03/2017 | | Set/Reset Deadlines/Hearings: Respondent Opposition To 10 Motion For Preliminary Injunction due by 10/6/2017. Petitioner Reply due by 10/9/2017. Motion Hearing set for 10/13/2017 at 11:00 AM in Courtroom 24A before Judge Emmet G. Sullivan. Joint Report due by 5:00PM On 10/11/2017. (mac) (Entered: 10/03/2017) |
| 10/03/2017 | 13 | |

| | | |
|---|---|---|
| | | NOTICE of Appearance by Terry Marcus Henry on behalf of EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Henry, Terry) (Entered: 10/03/2017) |
| 10/03/2017 | 14 | NOTICE of Appearance by Andrew I. Warden on behalf of EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Warden, Andrew) (Entered: 10/03/2017) |
| 10/04/2017 | 15 | NOTICE of Appearance by Adam Marc Thurschwell on behalf of NASHWAN AL–RAMER ABDULRAZZAQ (Thurschwell, Adam) (Entered: 10/04/2017) |
| 10/05/2017 | 16 | STANDING ORDER: The parties are directed to read the attached Standing Order Governing Civil Cases Before Judge Emmet G. Sullivan in its entirety upon receipt. The parties are hereby ORDERED to comply with the directives in the attached Standing Order. Signed by Judge Emmet G. Sullivan on 10/05/17. (Attachment: # 1 Exhibit 1) (mac) (Entered: 10/05/2017) |
| 10/05/2017 | 17 | Unopposed MOTION for Extension of Time to File Response/Reply by NASHWAN AL–RAMER ABDULRAZZAQ (Attachments: # 1 Text of Proposed Order)(Rushforth, Brent) (Entered: 10/05/2017) |
| 10/06/2017 | | MINUTE ORDER granting 17 motion for extension of time. Petitioner's reply shall be filed by no later than 5:00 pm EDT on October 10, 2017 rather than October 9, 2017. Given that counsel requested that the hearing on the motion for preliminary injunction be scheduled on October 9, 2017, see ECF No. 10 at 3, and in view of there being four counsel of record for the petitioner, the Court is perplexed by the purported reason given by counsel for the need for the extension of time. Nevertheless, the Court will reluctantly grant the motion. Further, the October 13, 2017 hearing date is HEREBY VACATED, and the hearing on motion for preliminary injunction is rescheduled for October 17, 2017 at 1:00 pm in Courtroom 24A. Signed by Judge Emmet G. Sullivan on 10/6/2017. (lcegs1) (Entered: 10/06/2017) |
| 10/06/2017 | 18 | Memorandum in opposition to re 10 MOTION for Preliminary Injunction *and Exhibit 1* filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Index of Exhibits, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 4, # 5 Text of Proposed Order)(Warden, Andrew) (Entered: 10/06/2017) |
| 10/06/2017 | 19 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP re 18 Memorandum in Opposition, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 3, # 2 Exhibit 4)(Warden, Andrew) (Entered: 10/06/2017) |
| 10/06/2017 | | Set/Reset Deadlines/Hearings: Petitioner's reply due by 10/10/2017. Preliminary Injunction Hearing reset for 10/17/2017 at 1:00 PM in Courtroom 24A before Judge Emmet G. Sullivan. (zcdw) (Entered: 10/07/2017) |
| 10/10/2017 | 20 | REPLY to opposition to motion re 10 MOTION for Preliminary Injunction *and Exhibit 1* filed by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Exhibit A (Sealed), # 2 Exhibit B)(Rushforth, Brent) (Entered: 10/10/2017) |
| 10/10/2017 | 21 | SEALED DOCUMENT filed by NASHWAN AL–RAMER ABDULRAZZAQ re 20 Reply to opposition to Motion (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A (Filed Under Seal))(Rushforth, |

| | | Brent) (Entered: 10/10/2017) |
|---|---|---|
| 10/11/2017 | 22 | NOTICE *Regarding Camp Five Echo Block* by MIKE BUMGARNER, GEORGE WALKER BUSH, JAY HOOD, BARACK HUSSEIN OBAMA, II, DONALD RUMSFELD, WADE F. DAVIS, HARRY B. HARRIS, JR, DONALD RUMSFELD, TOM COPEMAN, ROBERT M. GATES, BARACK HUSSEIN OBAMA, II, BRUCE VARGO, JOHN D. ALTENBURG, JR, MICHAEL BUMGARNER, GORDON R. ENGLAND, JAY HOOD, DONALD RUMSFELD, ROBERT GATES, DAVID THOMAS, JR, BRUCE VARGO, MIKE BUMGARNER, GEORGE WALKER BUSH, JAY HOOD, NELSON J. CANNON, JAY HOOD, BARACK HUSSEIN OBAMA, II, MIKE BUMGARNER, JAY HOOD, GEORGE WALKER BUSH, BRICE GYURISKO, BARACK HUSSEIN OBAMA, II, DONALD RUMSFELD, ROBERT GATES, DAVID M. THOMAS, JR, BRUCE VARGO, MICHAEL BUMGARNER, HARRY B. HARRIS, JR, JAY HOOD, DONALD H. RUMSFELD, GEORGE WALKER BUSH, JAY HOOD, DONALD H. RUMSFELD, ROBERT M. GATES, DAVID M. THOMAS, JR, BRUCE E. VARGO, ROBERT M. GATES, MIKE BUMGARNER, GEORGE WALKER BUSH, DONALD RUMSFELD, NELSON J. CANNON, JAY HOOD, STEVEN BLAISDELL, TOM COPEMAN, ROBERT GATES, BRICE GYURISKO, JAY HOOD, BARACK HUSSEIN OBAMA, II, NELSON J. CANNON, JAY HOOD, MIKE BUMGARNER, ROBERT M. GATES, JEFFREY HABERSON, DONNIE THOMAS, TOM COPERMAN, BRUCE VARGO, MIKE BUMGARNER, JAY HOOD, ASHTON B. CARTER, JOHN DOE, DAVID E. HEATH, JOSE R. MONTEAGUDO, NELSON J. CANNON, DONALD J. TRUMP, ROBERT GATES, ASHTON B. CARTER, PETER J. CLARKE, MIKE BUMGARNER, GEORGE WALKER BUSH, HARRY B. HARRIS, JR, JAY HOOD, DONALD H. RUMSFELD, MARK H. BUZBY, BRUCE VARGO, JAY HOOD, COMMANDER, JOINT TASK FORCE, GTMO, COMMANDER, PRISON CAMP, GTMO, RICHARD B. CHENEY, JOHN DOE, MICHAEL V. HAYDEN, CONDOLEEZZA RICE, DONALD RUMSFELD, GEORGE TENET, DAVID M. THOMAS, BRUCE VARGO, EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP, WADE F. DAVIS, HARRY B. HARRIS, JR, KYLE J. COZAD, DAVID HEATH, BARACK HUSSEIN OBAMA, II, DONALD J. TRUMP, ASHTON B. CARTER, PETER J. CLARKE, BARACK HUSSEIN OBAMA, II, DONALD J. TRUMP, DAVID M. THOMAS, JR, BRUCE VARGO (Attachments: # 1 Exhibit 1: Cashman Declaration)(Warden, Andrew) (Entered: 10/11/2017) |
| 10/11/2017 | 23 | NOTICE of Appearance by Ronald James Wiltsie on behalf of EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 10/11/2017) |
| 10/11/2017 | 24 | Joint STATUS REPORT by NASHWAN AL–RAMER ABDULRAZZAQ, EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Wiltsie, Ronald) (Entered: 10/11/2017) |
| 10/11/2017 | | MINUTE ORDER. In view of 20 petitioner's revised positions as to the relief requested, the parties are HEREBY ORDERED as follows: by no later than 5:00 pm on October 12, 2017, the parties shall submit a joint status report stating what preliminary relief remains at issue. To the extent relief remains at issue, the parties shall fully explain the basis for the disagreement and support the basis for disagreement with citations to points and authorities as appropriate. Signed by Judge Emmet G. Sullivan on 10/11/2017. (lcegs1) (Entered: 10/11/2017) |

| 10/12/2017 |    | Set/Reset Deadlines: Joint Status Report due by 5:00PM on 10/12/2018. (mac) (Entered: 10/12/2017) |
| 10/12/2017 | 25 | Joint STATUS REPORT by NASHWAN AL–RAMER ABDULRAZZAQ. (Rushforth, Brent) (Entered: 10/12/2017) |
| 10/13/2017 |    | MINUTE ORDER. In view of 25 Status Report, respondent is HEREBY ORDERED to file, by no later than 5:00 pm EDT on October 17, 2017, an updated Declaration by the Senior Medical Officer of Camp VII informing the Court of the current status of the petitioner's recuperation including, but not limited to the following: (1) whether additional recuperation time beyond the original 4 weeks is anticipated, and (2) the time frame for any removal of the petitioner from the recovery area. So that the petitioner may have an opportunity to review this information, the October 17, 2017 hearing date is HEREBY VACATED, and the hearing on motion for preliminary injunction is rescheduled for October 19, 2017 at 3:00 pm in Courtroom 24A. Signed by Judge Emmet G. Sullivan on 10/13/2017. (lcegs1) (Entered: 10/13/2017) |
| 10/16/2017 |    | Set/Reset Deadlines/Hearings: Respondent Declaration due by 10/17/2017. Preliminary Injunction Hearing set for 10/19/2017 at 3:00 PM in Courtroom 24A before Judge Emmet G. Sullivan. (mac) (Entered: 10/16/2017) |
| 10/17/2017 | 26 | NOTICE *Of Filing Of Public Version Of Exhibit #3 In Support Of Respondents' Opposition to Petitioner's Motion For Preliminary Injunction* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP re 19 Sealed Document, (Attachments: # 1 Exhibit 3 – Public Version)(Warden, Andrew) (Entered: 10/17/2017) |
| 10/17/2017 | 27 | NOTICE *of Filing of Supplemental Declaration* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Supplementary Declaration)(Wiltsie, Ronald) (Entered: 10/17/2017) |
| 10/17/2017 | 28 | Supplemental STATUS REPORT by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Rushforth, Brent) (Entered: 10/17/2017) |
| 10/18/2017 |    | MINUTE ORDER. In view of 28 Petitioner's Supplemental Status Report filed October 17, 2017, the respondent is HEREBY ORDERED to file a response by no later than 5:00 pm EDT on October 18, 2017. Signed by Judge Emmet G. Sullivan on 10/18/2017. (lcegs1) (Entered: 10/18/2017) |
| 10/18/2017 | 29 | Supplemental STATUS REPORT *of Respondents* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Wiltsie, Ronald) (Entered: 10/18/2017) |
| 10/19/2017 |    | Minute Entry for proceedings held before Judge Emmet G. Sullivan: Preliminary Injunction Hearing Held on 10/19/2017. (Court Reporter SCOTT WALLACE.) (mac) (Entered: 10/20/2017) |
| 10/20/2017 |    | MINUTE ORDER. In view of the Petitioner's request during the motion hearing held on October 19, 2017 to file an amended complaint and the government's lack of opposition to that request, is it HEREBY ORDERED that the Petitioner shall file his amended complaint by no later than November 1, 2017. By no later than November 3, 2017, the government shall submit a proposed date for responding to the amended complaint. It is FURTHER ORDERED that by no later than October 27, 2017, the Petitioner shall file on the docket in this case the proposed order Petitioner provided |

| | | |
|---|---|---|
| | | to the Court and government counsel during the October 19, 2017 motion hearing, and any additional proposed order relating to 10 Motion for Preliminary Injunction the Petitioner seeks to put before the Court. The government shall file any response to the proposed order(s) by no later than November 3, 2017; and the Petitioner shall file any reply by no later than November 10, 2017. Signed by Judge Emmet G. Sullivan on 10/20/2017. (lcegs1) (Entered: 10/20/2017) |
| 10/20/2017 | | MINUTE ORDER. In view of 10 Motion for Preliminary Injunction and the matters discussed at the October 19, 2017 motion hearing, the parties are HEREBY ORDERED to submit a biweekly joint status report until further Order of the Court. The joint report shall provide the status of the following: (1) current medical condition of the Petitioner; (2) production of the Petitioner's medical records to habeas counsel in a non–classified format; (3) the number of times the Petitioner was subjected to FCE procedures during the preceding two week period and the reason for the use of FCE procedures; and (4) the number of times an attorney–client meeting occurred between the Petitioner and habeas counsel during the preceding two week period. The first joint status report shall be filed by no later than November 2, 2017. Signed by Judge Emmet G. Sullivan on 10/20/2017. (lcegs1) (Entered: 10/20/2017) |
| 10/20/2017 | | Set/Reset Deadlines: Petitioner Amended Pleadings due by 11/1/2017. Government To Submit A Proposed Date For Responding For Responding To The Amended Complaint due by 11/3/2017. Petitioner To File The Proposed Order Petitioner Provided To The Court And Government Counsel During The October 19, 2017 Motion Hearing due by 10/27/2017. Government Response To The Proposed Order due by 11/3/2017. Petitioner Reply due by 11/10/2017. (mac) (Entered: 10/20/2017) |
| 10/20/2017 | | Set/Reset Deadlines: Joint Status Report due by 11/2/2017. (mac) (Entered: 10/20/2017) |
| 10/27/2017 | 30 | NOTICE of Proposed Order *re October 19, 2017 hearing on the Motion for Preliminary Injunction* by NASHWAN AL–RAMER ABDULRAZZAQ (Rushforth, Brent) (Entered: 10/27/2017) |
| 10/27/2017 | 31 | NOTICE of Proposed Order *Concerning "Forced Cell Extractions"* by NASHWAN AL–RAMER ABDULRAZZAQ (Rushforth, Brent) (Entered: 10/27/2017) |
| 10/30/2017 | 32 | WITHDRAWN PURSUANT TO NOTICE FILED 11/1/2017.....MOTION for Relief from Filing Courtesy Copies of Classified Filings by NASHWAN AL–RAMER ABDULRAZZAQ (Rushforth, Brent) Modified event title on 10/31/2017 (znmw). Modified on 11/2/2017 (znmw). (Entered: 10/30/2017) |
| 11/01/2017 | 33 | NOTICE OF WITHDRAWAL OF MOTION by NASHWAN AL–RAMER ABDULRAZZAQ re 32 MOTION for Relief from Filing Courtesy Copies of Classified Filings (Rushforth, Brent) (Entered: 11/01/2017) |
| 11/01/2017 | 34 | AMENDED COMPLAINT *Petition for Writ of Habeas Corpus* against EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP filed by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Petitioner's Exhibit List, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Redlined Version of Amended Petition for Writ of Habeas Corpus)(Rushforth, Brent) (Entered: 11/01/2017) |

| 11/02/2017 | 35 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 11/02/2017) |
|---|---|---|
| 11/03/2017 | 36 | RESPONSE *Respondents' Response to Petitioner's Revised Proposed Orders Concerning Counsel Access and Forced Cell Extractions* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP re 30 Notice of Proposed Order, 31 Notice of Proposed Order (Wiltsie, Ronald) Modified event title on 11/6/2017 (znmw). (Entered: 11/03/2017) |
| 11/03/2017 | 37 | NOTICE *of Proposed Date for Response to the Amended Petition* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 11/03/2017) |
| 11/07/2017 | 38 | NOTICE *of Filing Robert L. Palmer's Memorandum of Understanding Regarding Access to Classified National Security Information, Acknowledgment and Affirmation* by NASHWAN AL−RAMER ABDULRAZZAQ (Rushforth, Brent) (Entered: 11/07/2017) |
| 11/08/2017 | 39 | NOTICE *of Filing Abu−Elgassim Gadem, Raul Ayala, Aimee M. Cooper, and Adam Thurschwell's Memorandum of Understanding Regarding Access to Classified National Security Information, Acknowledgment and Affirmation* by NASHWAN AL−RAMER ABDULRAZZAQ (Rushforth, Brent) (Entered: 11/08/2017) |
| 11/09/2017 | 40 | REPLY re 36 Notice (Other), *Petitioner's Reply to Respondents' Response to Petitioner's Revised Proposed Orders Concerning Counsel Access and Forced Cell Extractions* filed by NASHWAN AL−RAMER ABDULRAZZAQ. (Rushforth, Brent) (Entered: 11/09/2017) |
| 11/16/2017 | 41 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Decl of Senior Medical Officer)(Wiltsie, Ronald) (Entered: 11/16/2017) |
| 11/22/2017 | 42 | MOTION Relief from filing courtesy copies of classified filing by NASHWAN AL−RAMER ABDULRAZZAQ (Thurschwell, Adam) (Entered: 11/22/2017) |
| 11/29/2017 | 43 | NOTICE *of Filing* by NASHWAN AL−RAMER ABDULRAZZAQ (Thurschwell, Adam) (Entered: 11/29/2017) |
| 11/29/2017 | | MINUTE ORDER denying as moot 42 unopposed motion for relief from filing courtesy copies of petitioner's second amended complaint in view of 43 Notice of Filing. Petitioner's counsel is reminded of Local Civil Rule 7(c) which requires each motion and opposition to be accompanied by a proposed order. Signed by Judge Emmet G. Sullivan on 11/29/2017. (lcegs1) (Entered: 11/29/2017) |
| 11/30/2017 | 44 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration of Senior Medical Officer)(Wiltsie, Ronald) (Entered: 11/30/2017) |
| 12/06/2017 | | MINUTE ORDER. In view of 37 Notice of Proposed Date for Response to the Amended Petition, and 43 Notice of Filing the Second Amended Petition for a Writ of Habeas Corpus on November 29, 2017, the respondent shall respond to the petition by no later than January 10, 2018. Signed by Judge Emmet G. Sullivan on 12/6/2017. (lcegs1) (Entered: 12/06/2017) |

| 12/06/2017 | | Set/Reset Deadlines: Respondent Response To The Petition due by 1/10/2018. (mac) (Entered: 12/06/2017) |
|---|---|---|
| 12/14/2017 | 45 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration of Senior Medical Officer)(Wiltsie, Ronald) (Entered: 12/14/2017) |
| 12/28/2017 | 46 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration of Senior Medical Officer, # 2 Exhibit Declaration of James Cobey, M.D.)(Wiltsie, Ronald) (Entered: 12/28/2017) |
| 01/10/2018 | 47 | MOTION to Dismiss *Petitioner's Second Amended Petition for a Writ of Habeas Corpus* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Declaration, # 3 Exhibit Declaration, # 4 Text of Proposed Order)(Wiltsie, Ronald) (Entered: 01/10/2018) |
| 01/11/2018 | 48 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration of Senior Medical Officer, # 2 Exhibit E–Mail)(Wiltsie, Ronald) (Entered: 01/11/2018) |
| 01/17/2018 | 49 | MOTION for Order *Unopposed Motion for Briefing Schedule for Respondent's Motion to Dismiss Petitioner's Second Amended Petition for a Writ of Habeas Corpus* by NASHWAN AL–RAMER ABDULRAZZAQ (Attachments: # 1 Text of Proposed Order Proposed Order for Petitioners Unopposed Motion)(Thurschwell, Adam) (Entered: 01/17/2018) |
| 01/19/2018 | | MINUTE ORDER granting 49 unopposed motion for briefing schedule. Petitioner's opposition to respondents' motion to dismiss shall be filed by no later than February 16, 2018. Respondents' reply shall be filed by no later than February 28, 2018. Signed by Judge Emmet G. Sullivan on 1/19/2018. (lcegs1) (Entered: 01/19/2018) |
| 01/22/2018 | | Set/Reset Deadlines: Petitioner's Opposition To Respondents Motion To Dismiss due by 2/16/2018. Respondents Reply due by 2/28/2018. (mac) (Entered: 01/22/2018) |
| 01/25/2018 | 50 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Decl. of Senior Medical Officer)(Wiltsie, Ronald) (Entered: 01/25/2018) |
| 01/30/2018 | 51 | NOTICE *Regarding Camp Four* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Declaration of Rear Admiral Cashman)(Warden, Andrew) (Entered: 01/30/2018) |
| 02/08/2018 | 52 | NOTICE of Appearance by Susan Amelia Hensler on behalf of NASHWAN AL–RAMER ABDULRAZZAQ (Hensler, Susan) (Entered: 02/08/2018) |
| 02/08/2018 | 53 | NOTICE *of Filing* by NASHWAN AL–RAMER ABDULRAZZAQ (Hensler, Susan) (Entered: 02/08/2018) |
| 02/08/2018 | 54 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration of Senior Medical Officer, # 2 Exhibit Military Commission |

| | | |
|---|---|---|
| | | Transcript)(Wiltsie, Ronald) (Entered: 02/08/2018) |
| 02/09/2018 | | MINUTE ORDER. In view of 53 and the exigent nature thereof, a status hearing on Petitioner's Motion for Temporary Restraining Order is hereby scheduled for February 9, 2018 at 5:00 pm in Courtroom 24A. Signed by Judge Emmet G. Sullivan on 2/9/2018. (lcegs1) (Entered: 02/09/2018) |
| 02/09/2018 | 55 | RESPONSE re 53 Notice (Other) *Respondents' Opposition To Motion For Temporary Restraining Order* filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Feb. 4 Transcript, # 2 Exhibit Feb. 6 Transcript, # 3 Exhibit Jan. 31 Transcript)(Warden, Andrew) (Entered: 02/09/2018) |
| 02/12/2018 | 56 | Unopposed MOTION for Extension of Time to *the Briefing Schedule* by NASHWAN AL–RAMER ABDULRAZZAQ (Attachments: # 1 Text of Proposed Order Proposed Order)(Hensler, Susan) (Entered: 02/12/2018) |
| 02/15/2018 | | MINUTE ORDER granting 56 Motion for Extension of Time. Petitioner's opposition shall be filed by no later than March 2, 2018. Respondent's reply shall be filed by no later than March 14, 2018. Signed by Judge Emmet G. Sullivan on 2/15/2018. (lcegs1) (Entered: 02/15/2018) |
| 02/16/2018 | | Set/Reset Deadlines: Petitioner's Opposition due by 3/2/2018. Respondent' Reply due by 3/14/2018. (mac) (Entered: 02/16/2018) |
| 02/22/2018 | 57 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 02/22/2018) |
| 02/26/2018 | 58 | TRANSCRIPT OF PROCEEDINGS before Judge Emmet G. Sullivan held on 2–9–18; Page Numbers: 1–33. Date of Issuance:2–26–18. Court Reporter/Transcriber Scott Wallace, Telephone number 202–354–3196, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 3/19/2018. Redacted Transcript Deadline set for 3/29/2018. Release of Transcript Restriction set for 5/27/2018.(Wallace, Scott) (Entered: 02/26/2018) |
| 03/02/2018 | 59 | RESPONSE re 47 MOTION to Dismiss *Petitioner's Second Amended Petition for a Writ of Habeas Corpus* filed by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Exhibit Interrogation Summary)(Thurschwell, Adam) (Entered: 03/02/2018) |
| 03/08/2018 | 60 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit)(Wiltsie, Ronald) (Entered: 03/08/2018) |

| 03/12/2018 | 61 | TRANSCRIPT OF PROCEEDINGS before Judge Emmet G. Sullivan held on 2−9−18; Page Numbers: 1−33. Date of Issuance:2−28−18. Court Reporter/Transcriber Scott Wallace, Telephone number 202−354−3196, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 4/2/2018. Redacted Transcript Deadline set for 4/12/2018. Release of Transcript Restriction set for 6/10/2018.(Wallace, Scott) (Entered: 03/12/2018) |
|---|---|---|
| 03/14/2018 | 62 | REPLY to opposition to motion re 47 MOTION to Dismiss *Petitioner's Second Amended Petition for a Writ of Habeas Corpus* filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Transcript, # 2 Exhibit Declaration, # 3 Exhibit Declaration, # 4 Exhibit Transcript)(Wiltsie, Ronald) (Entered: 03/14/2018) |
| 03/22/2018 | 63 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declartion, # 2 Exhibit Notice)(Wiltsie, Ronald) (Entered: 03/22/2018) |
| 03/27/2018 | | MINUTE ORDER. In view of 54 , 60 , and 63 joint status reports, the respondent is HEREBY ORDERED to show cause by no later than April 3, 2018, why medical records cannot be released to habeas counsel in a non−classified format within two weeks of creation. Petitioner shall respond to respondent's response to this show cause order by no later than April 6, 2018. Also in view of 60 joint status report, the Court has been unable to locate a pending request before this Court from the petitioner to allow him to be examined by an independent medical examiner. To the extent the petitioner seeks such relief, it must be filed as a motion with this Court. Signed by Judge Emmet G. Sullivan on 3/27/2018. (lcegs1) (Entered: 03/27/2018) |
| 03/27/2018 | | Set/Reset Deadlines: Respondent To Show Cause due by 4/3/2018. Petitioner Response To Respondent's Response To Show Cause Order due by 4/6/2018. (mac) (Entered: 03/27/2018) |
| 04/03/2018 | 64 | RESPONSE TO ORDER TO SHOW CAUSE by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP . (Wiltsie, Ronald) (Entered: 04/03/2018) |
| 04/05/2018 | 65 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 04/05/2018) |
| 04/06/2018 | 66 | RESPONSE TO ORDER OF THE COURT re Order,, *Petitioner's Reply to Respondent's Response to Order to Show Cause* filed by NASHWAN AL−RAMER ABDULRAZZAQ. (Attachments: # 1 Exhibit Medical Record Production Table, # 2 Exhibit Feb. 4 Transcript, # 3 Exhibit Email)(Hensler, Susan) (Entered: 04/06/2018) |
| 04/10/2018 | 67 | |

| | | |
|---|---|---|
| | | REPLY *Supporting Respondents'* <u>66</u> *Response to Order to Show Cause* filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Wiltsie, Ronald) Modified on 4/10/2018 to add docket link (jf). (Entered: 04/10/2018) |
| 04/19/2018 | <u>68</u> | ERRATA *Supplementing Respondent's Reply Concerning Order to Show Cause* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Wiltsie, Ronald) (Entered: 04/19/2018) |
| 04/19/2018 | <u>69</u> | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # <u>1</u> Exhibit Declaration)(Wiltsie, Ronald) (Entered: 04/19/2018) |
| 04/20/2018 | <u>70</u> | MOTION to Withdraw as Attorney by NASHWAN AL–RAMER ABDULRAZZAQ (Attachments: # <u>1</u> Text of Proposed Order)(Heavlin, Tiffany) (Entered: 04/20/2018) |
| 04/20/2018 | | MINUTE ORDER granting <u>70</u> motion for withdrawal of counsel. Tiffany Heavlin is hereby withdrawn as counsel in this proceeding. Attorney Tiffany Heavlin terminated. Signed by Judge Emmet G. Sullivan on 4/20/2018. (lcegs1) (Entered: 04/20/2018) |
| 04/24/2018 | <u>71</u> | ENTERED IN ERROR.....NOTICE *Regarding Camp II, Building 8* by MIKE BUMGARNER, GEORGE WALKER BUSH, JAY HOOD, BARACK HUSSEIN OBAMA, II, DONALD RUMSFELD (Attachments: # <u>1</u> Exhibit Declaration)(Wiltsie, Ronald) Modified on 4/24/2018 to enter in error due to linkage issues; counsel will refile.(ztnr) (Entered: 04/24/2018) |
| 04/24/2018 | <u>72</u> | NOTICE *Regarding Camp II, Building (refiled due to linkage issue)* by MIKE BUMGARNER, GEORGE WALKER BUSH, JAY HOOD, BARACK HUSSEIN OBAMA, II, DONALD RUMSFELD, WADE F. DAVIS, HARRY B. HARRIS, JR, DONALD RUMSFELD, TOM COPEMAN, ROBERT M. GATES, BARACK HUSSEIN OBAMA, II, BRUCE VARGO, JOHN D. ALTENBURG, JR, MICHAEL BUMGARNER, GORDON R. ENGLAND, JAY HOOD, DONALD RUMSFELD, ROBERT GATES, DAVID THOMAS, JR, BRUCE VARGO, MIKE BUMGARNER, GEORGE WALKER BUSH, JAY HOOD, NELSON J. CANNON, JAY HOOD, BARACK HUSSEIN OBAMA, II, MIKE BUMGARNER, JAY HOOD, DONALD J. TRUMP, GEORGE WALKER BUSH, BRICE GYURISKO, BARACK HUSSEIN OBAMA, II, DONALD RUMSFELD, ROBERT GATES, DAVID M. THOMAS, JR, BRUCE VARGO, MICHAEL BUMGARNER, HARRY B. HARRIS, JR, JAY HOOD, DONALD H. RUMSFELD, GEORGE WALKER BUSH, JAY HOOD, DONALD H. RUMSFELD, ROBERT M. GATES, DAVID M. THOMAS, JR, BRUCE E. VARGO, ROBERT M. GATES, MIKE BUMGARNER, GEORGE WALKER BUSH, DONALD RUMSFELD, NELSON J. CANNON, JAY HOOD, STEVEN BLAISDELL, TOM COPEMAN, ROBERT GATES, BRICE GYURISKO, JAY HOOD, BARACK HUSSEIN OBAMA, II, NELSON J. CANNON, JAY HOOD, MIKE BUMGARNER, TOM COPERMAN, BRUCE VARGO, MIKE BUMGARNER, JAY HOOD, ASHTON B. CARTER, JOHN DOE, DAVID E. HEATH, JOSE R. MONTEAGUDO, NELSON J. CANNON, DONALD J. TRUMP, ROBERT GATES, GEORGE WALKER BUSH, HARRY B. HARRIS, JR, JAY HOOD, DONALD H. RUMSFELD, MARK H. BUZBY, BRUCE VARGO, JAY HOOD, COMMANDER, JOINT TASK FORCE, GTMO, COMMANDER, PRISON CAMP, GTMO, RICHARD B. CHENEY, JOHN DOE, ROBERT M. GATES, MICHAEL V. HAYDEN, CONDOLEEZZA RICE, DONALD RUMSFELD, GEORGE TENET, DAVID M. THOMAS, BRUCE VARGO, EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY |

| | | RISHIKOF, DONALD J. TRUMP, WADE F. DAVIS, HARRY B. HARRIS, JR, KYLE J. COZAD, DAVID HEATH, BARACK HUSSEIN OBAMA, II, DONALD J. TRUMP, DAVID M. THOMAS, JR, BRUCE VARGO (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 04/24/2018) |
|---|---|---|
| 05/03/2018 | 73 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit 1)(Henry, Terry) (Entered: 05/03/2018) |
| 05/03/2018 | 74 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP re 73 Status Report (This document is SEALED and only available to authorized persons.)(Henry, Terry) (Entered: 05/03/2018) |
| 05/15/2018 | 76 | AFFIDAVIT *CJA Form 23 Financial Affidavit* by NASHWAN AL–RAMER ABDULRAZZAQ. (Thurschwell, Adam) (Entered: 05/15/2018) |
| 05/16/2018 | 77 | NOTICE OF FILING REDACTED DOCUMENT to 73 Status Report −−*Exhibit 2*−− by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (The original PDF Document contained privacy information and was restricted pursuant to the E–Government Act.) (Attachments: # 1 Exhibit 2)(Henry, Terry) (Entered: 05/16/2018) |
| 05/17/2018 | 78 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1 to Joint Status Report, # 2 Exhibit 2 to Joint Status Report, # 3 Exhibit 3 to Joint Status Report, # 4 Exhibit 4 to Joint Status Report)(Henry, Terry) (Entered: 05/17/2018) |
| 05/18/2018 | 79 | NOTICE *of Public Filing of May 17, 2018 Joint Status Report* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP re 78 Sealed Document, (Attachments: # 1 Joint Status Report, # 2 Exhibit 1 to Joint Status Report, # 3 Exhibit 2 to Joint Status Report, # 4 Exhibit 3 to Joint Status Report, # 5 Exhibit 4 to Joint Status Report)(Henry, Terry) (Entered: 05/18/2018) |
| 05/24/2018 | 80 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 05/24/2018) |
| 05/29/2018 | 81 | NOTICE *of Public Filing* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Supplemental Status Report, # 2 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 05/29/2018) |
| 05/31/2018 | 82 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Letter, # 3 Certificate of Service)(Wiltsie, Ronald) (Entered: 05/31/2018) |
| 06/06/2018 | 83 | NOTICE *of Public Filing* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Joint Status Report, # 2 Exhibit Declaration, # 3 Exhibit Letter)(Wiltsie, |

| | | |
|---|---|---|
| | | Ronald) (Entered: 06/06/2018) |
| 06/14/2018 | 84 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 06/14/2018) |
| 06/28/2018 | 86 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 06/28/2018) |
| 07/05/2018 | 87 | MOTION *for Discovery Conference* by NASHWAN AL–RAMER ABDULRAZZAQ, EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Letter, # 2 Exhibit Letter)(Wiltsie, Ronald) Modified event and text on 7/12/2018 (ztd). (Entered: 07/05/2018) |
| 07/12/2018 | 88 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 07/12/2018) |
| 07/20/2018 | | MINUTE ORDER denying 87 joint request for discovery conference. Any discovery related motion shall be filed by no later than 5:00 pm on July 23, 2018. A response shall be filed by no later than 5:00 pm on July 25, 2018. The motion and the response shall be no longer than 5 pages each. Signed by Judge Emmet G. Sullivan on 7/20/2018. (lcegs1) (Entered: 07/20/2018) |
| 07/20/2018 | | Set/Reset Deadlines: Discovery Related Motions due on 7/23/2018 By 5:00PM. Responses due on 7/25/2018 by 5:00PM. (mac) (Entered: 07/20/2018) |
| 07/23/2018 | 89 | MOTION to Compel *Discovery* by NASHWAN AL–RAMER ABDULRAZZAQ (Thurschwell, Adam) (Entered: 07/23/2018) |
| 07/25/2018 | 90 | RESPONSE re 89 MOTION to Compel *Discovery* filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Wiltsie, Ronald) (Entered: 07/25/2018) |
| 07/26/2018 | 91 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Declaration, # 3 Exhibit Military Commission Filing, # 4 Certificate of Service)(Wiltsie, Ronald) (Entered: 07/26/2018) |
| 07/26/2018 | 92 | NOTICE *of Filing Under Seal* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 07/26/2018) |
| 08/03/2018 | 93 | NOTICE *of Public Filing* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Joint Status Report, # 2 Exhibit Joint Staus Report Ex. 1 Declaration, # 3 Exhibit Joint Status Report Ex. 2 Declaration, # 4 Exhibit Joint Status Report Ex. 3 Filing)(Wiltsie, Ronald) (Entered: 08/03/2018) |
| 08/07/2018 | | MINUTE ORDER. In view of 64 respondent's response to order to show cause in which the respondent stated that it would be able to eliminate approximately two weeks from the production of medical records, 66 petitioner's reply, and 67 respondent's reply, as well as the biweekly joint status reports submitted between May |

| | | |
|---|---|---|
| | | 3, 2018, and July 26, 2018, it appears to the Court that the respondent has produced some of the medical records on a faster schedule. For example, medical records created in mid May 2018 were produced on June 13, 2018, and medical records created on May 11, 2018 were produced on June 22, 2018. The Court credits the respondent's explanation regarding the constraints on a shorter production schedule, the availability of a weekly courier to bring the documents from Guantanamo Bay to Washington, DC, and the need for the records to undergo classification review. Id. at 3–7. Therefore, the Court discharges the order to show cause. In discharging this order to show cause, the Court expects the respondent to "produce [medical] records 'approximately monthly' for records created approximately 4 to 6 weeks earlier" as stated in the respondent's response to the Courts order to show cause. ECF No. 64 at 7. Signed by Judge Emmet G. Sullivan on 8/7/2018. (lcegs1) (Entered: 08/07/2018) |
| 08/07/2018 | | MINUTE ORDER denying 89 motion to compel discovery without prejudice to refiling, if appropriate, following the Court's ruling on 10 Motion for Preliminary Injunction and 47 Motion to Dismiss. Signed by Judge Emmet G. Sullivan on 8/7/2018. (lcegs1) (Entered: 08/07/2018) |
| 08/07/2018 | | MINUTE ORDER. The Court, sua sponte, schedules a motion hearing to hear oral argument on the pending 47 Motion to Dismiss. The motion hearing shall take place on November 14, 2018 at 10:00 am in Courtroom 24A. Signed by Judge Emmet G. Sullivan on 8/7/2018. (lcegs1) (Entered: 08/07/2018) |
| 08/07/2018 | | Set/Reset Hearings: Motion Hearing set for 11/14/2018 at 10:00 AM in Courtroom 24A before Judge Emmet G. Sullivan. (mac) (Entered: 08/07/2018) |
| 08/08/2018 | | MINUTE ORDER STAYING CASE. In view of the motion hearing scheduled for November 14, 2018, further proceedings in this case are STAYED pending the hearing and Courts resolution of the pending Motion to Dismiss, EXCEPT that the parties shall continue to file the biweekly joint status reports ordered in the Courts Minute Order of October 20, 2017. Signed by Judge Emmet G. Sullivan on 8/8/2018. (lcegs1) (Entered: 08/08/2018) |
| 08/08/2018 | | Case Stayed (mac) (Entered: 08/09/2018) |
| 08/09/2018 | 94 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Certificate of Service)(Wiltsie, Ronald) (Entered: 08/09/2018) |
| 08/09/2018 | 95 | NOTICE of Filing Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 08/09/2018) |
| 08/23/2018 | 96 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Certificate of Service)(Wiltsie, Ronald) (Entered: 08/23/2018) |
| 08/23/2018 | 97 | NOTICE of Filing Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 08/23/2018) |
| 08/27/2018 | 98 | NOTICE of Public Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 |

| | | |
|---|---|---|
| | | Exhibit Joint Status Report (public), # 2 Exhibit Declaration (public))(Wiltsie, Ronald) (Entered: 08/27/2018) |
| 09/06/2018 | 99 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Declaration, # 3 Exhibit Medical Record, # 4 Certificate of Service)(Wiltsie, Ronald) (Entered: 09/06/2018) |
| 09/06/2018 | 100 | NOTICE of Filing Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 09/06/2018) |
| 09/20/2018 | 101 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Certificate of Service)(Wiltsie, Ronald) (Entered: 09/20/2018) |
| 09/20/2018 | 102 | NOTICE of Filing Document Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 09/20/2018) |
| 10/04/2018 | 103 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit SMO Declaration, # 2 Exhibit SMO Declaration, # 3 Exhibit SMO Declaration, # 4 Exhibit SMO Declaration, # 5 Exhibit SMO Declaration, # 6 Certificate of Service)(Wiltsie, Ronald) (Entered: 10/04/2018) |
| 10/04/2018 | 104 | NOTICE of Filing Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 10/04/2018) |
| 10/10/2018 | 105 | NOTICE of Change of Address by Andrew I. Warden (Warden, Andrew) (Entered: 10/10/2018) |
| 10/11/2018 | 106 | NOTICE of Change of Address by Terry Marcus Henry (Henry, Terry) (Entered: 10/11/2018) |
| 10/11/2018 | 107 | NOTICE of Change of Address by Ronald James Wiltsie (Wiltsie, Ronald) (Entered: 10/11/2018) |
| 10/18/2018 | 108 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 10/18/2018) |
| 10/26/2018 | | MINUTE ORDER. The Court, sua sponte, cancels the motions hearing scheduled for November 14, 2018. In the event the Court is unable to resolve the pending motion to dismiss without a hearing, the Court will advise the parties and reschedule the hearing for a mutually agreeable date and time. Signed by Judge Emmet G. Sullivan on 10/26/2018. (lcegs1) (Entered: 10/26/2018) |
| 11/01/2018 | 109 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 11/01/2018) |

| 11/14/2018 | 110 | NOTICE of Classified Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 11/14/2018) |
|---|---|---|
| 11/15/2018 | 111 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Declaration, # 3 Exhibit Declaration, # 4 Certificate of Service)(Wiltsie, Ronald) (Entered: 11/15/2018) |
| 11/15/2018 | 112 | NOTICE of Filing Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 11/15/2018) |
| 11/29/2018 | 113 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 11/29/2018) |
| 12/12/2018 | 114 | NOTICE of Appearance by Meghan Suzanne Skelton on behalf of NASHWAN AL–RAMER ABDULRAZZAQ (Skelton, Meghan) (Entered: 12/12/2018) |
| 12/13/2018 | 115 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit 1)(Henry, Terry) (Entered: 12/13/2018) |
| 12/27/2018 | 116 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 12/27/2018) |
| 01/07/2019 | 117 | MOTION to Stay the Filing of Joint Status Reports because of Lapse in Appropriations by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Text of Proposed Order)(Wiltsie, Ronald) (Entered: 01/07/2019) |
| 01/09/2019 | 118 | RESPONSE re 117 MOTION to Stay the Filing of Joint Status Reports because of Lapse in Appropriations filed by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Text of Proposed Order)(Thurschwell, Adam) (Entered: 01/09/2019) |
| 01/09/2019 | | MINUTE ORDER directing the government to respond to 118 petitioner's response to respondent's motion to stay the filing of joint status reports because of lapse in appropriations by no later than 12:00 pm on January 10, 2019. Signed by Judge Emmet G. Sullivan on 1/9/2019. (lcegs1) (Entered: 01/09/2019) |
| 01/10/2019 | | Set/Reset Deadlines: Government Response To 118 Petitioner's Response To Respondent's Motion To Stay The Filing Of Joint Status Reports due on 1/10/2019 by 12:00PM. (mac) (Entered: 01/10/2019) |
| 01/10/2019 | 119 | REPLY to opposition to motion re 117 MOTION to Stay the Filing of Joint Status Reports because of Lapse in Appropriations filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Wiltsie, Ronald) (Entered: 01/10/2019) |
| 01/10/2019 | | MINUTE ORDER granting in part and denying in part 117 motion to stay the filing of joint status reports because of the lapse in appropriations. It is HEREBY ORDERED that during the lapse in Department of Justice funding, Respondents are excused from |

| | | |
|---|---|---|
| | | the requirements of the Court's Minute Order dated October 20, 2017; and it is FURTHER ORDERED that the Petitioner is excused from the following requirements in that Minute Order: (1) status of production of the Petitioner's medical records to habeas counsel in a non–classified format; (2) the number of times the Petitioner was subjected to FCE procedures during the preceding two week period and the reason for the use of FCE procedures; and (3) the number of times an attorney–client meeting occurred between the Petitioner and habeas counsel during the preceding two week period; and it is FURTHER ORDERED that the Petitioner shall file a biweekly unilateral status report regarding the current medical condition of the Petitioner that attaches the most recent Senior Medical Officer declaration provided to the defense in the military commission case United States v. al Hadi al–Iraqi; and it is FURTHER ORDERED that upon the restoration of funding, respondents may file a consolidated response to any of the unilateral status reports; and it is FURTHER ORDERED that nothing in this Order prevents the Petitioner from bringing to the Court's immediate attention any matter the Petitioner's counsel deems necessary; and it is FURTHER ORDERED that the filing date for the first unilateral status report is January 15, 2019 and that such reports shall be filed on a bi–weekly basis beginning January 24, 2019. Signed by Judge Emmet G. Sullivan on 1/10/2019. (lcegs1) (Entered: 01/10/2019) |
| 01/15/2019 | 120 | STATUS REPORT by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Exhibit SMO Declaration, # 2 Exhibit Testimony, # 3 Exhibit Testimony, # 4 Exhibit Testimony, # 5 Exhibit Testimony)(Thurschwell, Adam) (Entered: 01/15/2019) |
| 01/24/2019 | 121 | STATUS REPORT by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Exhibit SMO Declaration)(Thurschwell, Adam) (Entered: 01/24/2019) |
| 01/28/2019 | 122 | NOTICE to the Court of Restoration of Appropriations by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 01/28/2019) |
| 02/07/2019 | 123 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 02/07/2019) |
| 02/21/2019 | 124 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Certificate of Service)(Wiltsie, Ronald) (Entered: 02/21/2019) |
| 02/21/2019 | 125 | NOTICE of Filing Document Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 02/21/2019) |
| 03/07/2019 | 126 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Certificate of Service)(Wiltsie, Ronald) (Entered: 03/07/2019) |
| 03/07/2019 | 127 | NOTICE of Under Seal Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Joint Status Report (public), # 2 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 03/07/2019) |
| 03/21/2019 | 128 | |

| | | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Certificate of Service)(Wiltsie, Ronald) (Entered: 03/21/2019) |
|---|---|---|
| 03/21/2019 | 129 | NOTICE of Filing Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 03/21/2019) |
| 04/04/2019 | 130 | NOTICE of Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Joint Status Report (public), # 2 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 04/04/2019) |
| 04/04/2019 | 131 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Certificate of Service)(Wiltsie, Ronald) (Entered: 04/04/2019) |
| 04/04/2019 | 132 | NOTICE of Filing Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 04/04/2019) |
| 04/18/2019 | 133 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 04/18/2019) |
| 05/02/2019 | 134 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 05/02/2019) |
| 05/16/2019 | 135 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 05/16/2019) |
| 05/30/2019 | 136 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 05/30/2019) |
| 06/13/2019 | 137 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 06/13/2019) |
| 06/27/2019 | 138 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Certificate of Service)(Wiltsie, Ronald) (Entered: 06/27/2019) |
| 06/27/2019 | 139 | NOTICE of Filing Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 06/27/2019) |
| 07/11/2019 | 140 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 07/11/2019) |

| 07/25/2019 | 141 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 07/25/2019) |
| 08/08/2019 | 142 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Declaration, # 2 Certificate of Service)(Wiltsie, Ronald) (Entered: 08/08/2019) |
| 08/08/2019 | 143 | NOTICE of Filing Under Seal by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 08/08/2019) |
| 08/14/2019 | 144 | NOTICE of Public Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Joint Status Report)(Wiltsie, Ronald) (Entered: 08/14/2019) |
| 08/22/2019 | 145 | NOTICE of Classified Filing by NASHWAN AL–RAMER ABDULRAZZAQ (Hensler, Susan) (Entered: 08/22/2019) |
| 08/22/2019 | 146 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 08/22/2019) |
| 08/23/2019 | 147 | MOTION to Lift Stay , MOTION for Preliminary Injunction by NASHWAN AL–RAMER ABDULRAZZAQ (Attachments: # 1 Exhibit Transcript – Aug 21, 2019, # 2 Exhibit Transcript – Aug 22, 2019)(Thurschwell, Adam) (Entered: 08/23/2019) |
| 08/23/2019 | 148 | NOTICE of Supplemental Classified Filing by NASHWAN AL–RAMER ABDULRAZZAQ (Hensler, Susan) (Entered: 08/23/2019) |
| 08/23/2019 | | MINUTE ORDER. The government shall file a response to the petitioner's motion for temporary restraining order filed with the Classified Security Information Officer by no later than 12:00 pm on August 26, 2019, and the petitioner shall file a reply by no later than 12:00 pm on August 27, 2019. Signed by Judge Emmet G. Sullivan on 8/23/2019. (lcegs1) (Entered: 08/23/2019) |
| 08/23/2019 | | Set/Reset Deadlines/Hearings: Response to 23 due by 12:00 PM on 8/26/2019. Reply due by 12:00 PM on 8/27/2019. (zcdw) (Entered: 08/25/2019) |
| 08/26/2019 | | Set/Reset Deadlines: Government Response To The Petitioner's Motion For Temporary Restraining Order due by 8/26/2019. Petitioner Reply due by 8/27/2019. (mac) (Entered: 08/26/2019) |
| 08/26/2019 | 149 | RESPONSE re 147 MOTION to Lift Stay MOTION for Preliminary Injunction filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Henry, Terry) (Entered: 08/26/2019) |
| 08/26/2019 | 150 | NOTICE of Classified Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Wiltsie, Ronald) (Entered: 08/26/2019) |
| 08/26/2019 | 151 | NOTICE of Classified Filing by NASHWAN AL–RAMER ABDULRAZZAQ (Hensler, Susan) (Entered: 08/26/2019) |
| 09/03/2019 | 152 | |

|  |  | REPLY to opposition to motion re 147 MOTION to Lift Stay MOTION for Preliminary Injunction filed by NASHWAN AL–RAMER ABDULRAZZAQ. (Thurschwell, Adam) (Entered: 09/03/2019) |
| --- | --- | --- |
| 09/05/2019 | 153 | SEALED DOCUMENT filed by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Joint Status Report, # 2 Certificate of Service)(Henry, Terry) (Entered: 09/05/2019) |
| 09/05/2019 | 154 | NOTICE *OF FILING UNDER SEAL* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP re 153 Sealed Document, (Henry, Terry) (Entered: 09/05/2019) |
| 09/10/2019 | 155 | NOTICE *OF CLASSIFIED FILING* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Henry, Terry) (Entered: 09/10/2019) |
| 09/10/2019 | 156 | NOTICE *OF PUBLIC FILING: JOINT STATUS REPORT* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP re 155 Notice (Other), 153 Sealed Document, 154 Notice (Other) (Attachments: # 1 Exhibit Joint Status Report Redacted)(Henry, Terry) (Entered: 09/10/2019) |
| 09/10/2019 | 157 | MOTION for Extension of Time to *File Joint Status Report, Nunc Pro Tunc* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Henry, Terry) (Entered: 09/10/2019) |
| 09/12/2019 |  | MINUTE ORDER granting 157 motion for extension of time to file joint status report, nunc pro tunc. Respondent's counsel is reminded of Local Civil Rule 7(c) which requires each motion and opposition to be accompanied by a proposed order. Signed by Judge Emmet G. Sullivan on 9/12/2019. (lcegs1) (Entered: 09/12/2019) |
| 09/19/2019 | 158 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 09/19/2019) |
| 09/19/2019 |  | MINUTE ORDER directing respondents to complete a classification review of the Second Amended Petition for a Writ of Habeas Corpus. Respondents are FURTHER DIRECTED to file on the public docket, by no later than October 4, 2019, an appropriately redacted version of the Second Amended Petition for a Writ of Habeas Corpus. Signed by Judge Emmet G. Sullivan on 9/19/2019. (lcegs1) (Entered: 09/19/2019) |
| 09/20/2019 |  | Set/Reset Deadlines: Respondents Redacted Version Of The Second Amended Petition For A Writ Of Habeas Corpus due by 10/4/2019. (mac) (Entered: 09/20/2019) |
| 09/26/2019 | 159 | ORDER held in abeyance 147 Motion to Lift Stay; denying 147 Motion for Preliminary Injunction. Signed by Judge Emmet G. Sullivan on 9/26/2019. (lcegs1) (Entered: 09/26/2019) |
| 09/26/2019 | 160 | MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 9/26/2019. (lcegs1) (Entered: 09/26/2019) |
| 09/27/2019 | 161 | Unopposed MOTION for Extension of Time to File *Document* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Text of Proposed Order)(Wiltsie, Ronald) |

| | | |
|---|---|---|
| | | (Entered: 09/27/2019) |
| 09/30/2019 | | MINUTE ORDER granting 161 unopposed motion for extension of time. Respondents shall file a public version of the narrative portion of the Second Amended Petition by no later than October 4, 2019. Respondents shall file a public version of the exhibits to the Second Amended Petition by no later than October 18, 2019. Signed by Judge Emmet G. Sullivan on 9/30/2019. (lcegs1) (Entered: 09/30/2019) |
| 10/01/2019 | | Set/Reset Deadlines: Respondents To File A Public Version Of The Exhibits To The Second Amended Petition due by 10/18/2019. (mac) (Entered: 10/01/2019) |
| 10/03/2019 | 162 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 10/03/2019) |
| 10/04/2019 | 163 | NOTICE of Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Second Amended Petition for Writ of Habeas Corpus)(Wiltsie, Ronald) (Entered: 10/04/2019) |
| 10/04/2019 | 164 | Second Amended PETITION for Writ of Habeas Corpus filed by NASHWAN AL–RAMER ABDULRAZZAQ.(jf) (Entered: 10/08/2019) |
| 10/17/2019 | 165 | Joint STATUS REPORT by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP. (Attachments: # 1 Exhibit Declaration)(Wiltsie, Ronald) (Entered: 10/17/2019) |
| 10/18/2019 | 166 | NOTICE of Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Second Amended Petition for Writ of Habeas Corpus Exs. A to G)(Wiltsie, Ronald) (Entered: 10/18/2019) |
| 10/18/2019 | 167 | NOTICE of Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Second Amended Petition for Writ of Habeas Corpus Exs. H to K)(Wiltsie, Ronald) (Entered: 10/18/2019) |
| 10/18/2019 | 168 | NOTICE of Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Second Amended Petition for Writ of Habeas Corpus Exs. L to T)(Wiltsie, Ronald) (Entered: 10/18/2019) |
| 10/18/2019 | 169 | NOTICE of Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Second Amended Petition for Writ of Habeas Corpus Exs. U to Z)(Wiltsie, Ronald) (Entered: 10/18/2019) |
| 10/18/2019 | 170 | NOTICE of Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Second Amended Petition for Writ of Habeas Corpus Exs. AA to MM)(Wiltsie, Ronald) (Entered: 10/18/2019) |
| 10/18/2019 | 171 | NOTICE of Filing by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Second Amended Petition for Writ of Habeas Corpus Ex NN Part 1 of 3)(Wiltsie, |

| | | |
|---|---|---|
| | | Ronald) (Entered: 10/18/2019) |
| 10/18/2019 | 172 | NOTICE *of Filing* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Second Amended Petition for Writ of Habeas Corpus Ex NN Part 2 of 3)(Wiltsie, Ronald) (Entered: 10/18/2019) |
| 10/18/2019 | 173 | NOTICE *of Fililng* by EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP (Attachments: # 1 Exhibit Second Amended Petition for Writ of Habeas Corpus Ex NN Part 3 of 3)(Wiltsie, Ronald) (Entered: 10/18/2019) |
| 10/28/2019 | 174 | ORDER granting in part and holding in abeyance in part 47 Motion to Dismiss; finding as moot 10 Motion for Preliminary Injunction. Signed by Judge Emmet G. Sullivan on 10/28/2019. (lcegs1) (Entered: 10/28/2019) |
| 10/28/2019 | 175 | MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 10/28/2019. (lcegs1) (Entered: 10/28/2019) |
| 06/06/2022 | 176 | NOTICE REGARDING CERTAIN BUILDINGS WITHIN CAMP DELTA by ALL RESPONDENTS. (Attachments: # 1 Exhibit)(ztnr) (Entered: 06/06/2022) |
| 06/06/2022 | 177 | SEALED DOCUMENT filed by LLOYD J. AUSTIN, III, JOSEPH R. BIDEN, JR, ANTONY BLINKEN, EDWARD B. CASHMAN, GEORGE WALKER BUSH, WADE F. DAVIS, HARRY B. HARRIS, JR, DONALD RUMSFELD, TOM COPEMAN, ROBERT M. GATES, BARACK HUSSEIN OBAMA, II, BRUCE VARGO, JOHN D. ALTENBURG, JR, MICHAEL BUMGARNER, GORDON R. ENGLAND, JAY HOOD, ROBERT GATES, BARACK HUSSEIN OBAMA, II, DAVID THOMAS, JR, BRUCE VARGO, MIKE BUMGARNER, GEORGE WALKER BUSH, JAY HOOD, BARACK HUSSEIN OBAMA, II, DONALD RUMSFELD, MIKE BUMGARNER, JAY HOOD, DONALD J. TRUMP, BRICE GYURISKO, JAY HOOD, BARACK HUSSEIN OBAMA, II, DONALD RUMSFELD, ROBERT GATES, DAVID M. THOMAS, JR, JAY HOOD, DONALD HENRY RUMSFELD, DAVID M. THOMAS, JR, BRUCE E. VARGO, ROBERT M. GATES, MIKE BUMGARNER, NELSON J. CANNON, JAY HOOD, LLOYD J. AUSTIN, III, JOSEPH R. BIDEN, JR, LANCE A. OKAMURA, STEVEN BLAISDELL, TOM COPEMAN, ROBERT GATES, BRICE GYURISKO, BARACK HUSSEIN OBAMA, II, NELSON J. CANNON, MIKE BUMGARNER, ALL RESPONDENTS, JOSEPH R. BIDEN, TOM COPERMAN, BRUCE VARGO, ROBERT M. GATES, DONNIE THOMAS, MIKE BUMGARNER, JAY HOOD, ASHTON B. CARTER, JOHN DOE, DAVID E. HEATH, JOSE R. MONTEAGUDO, LLOYD J. AUSTIN, III, GEORGE WALKER BUSH, HARRY B. HARRIS, JR, DONALD HENRY RUMSFELD, MARK H. BUZBY, ROBERT M. GATES, COMMANDER, JOINT TASK FORCE, GTMO, COMMANDER, PRISON CAMP, GTMO, RICHARD B. CHENEY, JOHN DOE CORPORATION, MICHAEL V. HAYDEN, CONDOLEEZZA RICE, DONALD RUMSFELD, GEORGE TENET, DAVID M. THOMAS, BRUCE VARGO, EDWARD B. CASHMAN, DAVID CULPEPPER, JAMES N. MATTIS, HARVEY RISHIKOF, DONALD J. TRUMP, WADE F. DAVIS, HARRY B. HARRIS, JR, KYLE J. COZAD, DAVID HEATH, DONALD J. TRUMP, LLOYD J. AUSTIN, III, JOSEPH R. BIDEN, JR, PETER J. CLARKE, BRUCE VARGO, JAY HOOD(This document is SEALED and only available to authorized persons.)(Heiman, Julia) (Entered: 06/06/2022) |
| 08/11/2023 | 178 | |

| | | |
|---|---|---|
| | | MOTION to Withdraw as Attorney by NASHWAN AL–RAMER ABDULRAZZAQ. (Thurschwell, Adam) (Entered: 08/11/2023) |
| 08/11/2023 | | MINUTE ORDER granting 178 motion to withdraw as attorney. Robert Palmer, Brent Rushforth, and Adam Thurschwell are hereby withdrawn as counsel for Mr. al–Tamir. Signed by Judge Emmet G. Sullivan on 8/11/2023. (lcegs1) (Entered: 08/11/2023) |
| 01/25/2024 | 179 | MOTION to Appoint Counsel by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Text of Proposed Order)(Wilson, Scott) (Entered: 01/25/2024) |
| 01/26/2024 | | MINUTE ORDER granting 179 motion to appoint counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B). For good cause shown, Scott Keith Wilson, Federal Public Defender for the District of Utah, and Benjamin C. McMurray, Assistant Federal Public Defender for the District of Utah, are appointed to represent Mr. al–Tamir. Signed by Judge Emmet G. Sullivan on 1/26/2024. (lcegs1) (Entered: 01/26/2024) |
| 01/26/2024 | 180 | NOTICE of Appearance by Scott Keith Wilson on behalf of NASHWAN AL–RAMER ABDULRAZZAQ (Wilson, Scott) (Entered: 01/26/2024) |
| 01/26/2024 | 181 | NOTICE of Appearance by Benjamin C. McMurray on behalf of NASHWAN AL–RAMER ABDULRAZZAQ (McMurray, Benjamin) (Entered: 01/26/2024) |
| 01/03/2025 | 182 | MOTION to Reopen Case by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Text of Proposed Order)(McMurray, Benjamin) (Entered: 01/03/2025) |
| 01/03/2025 | 183 | MOTION for Preliminary Injunction by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Exhibit 1 – Pretrial Agreement, # 2 Exhibit 2 – Appendix A to the Offer for Pretrial Agreement, # 3 Exhibit 3 – Addendum to Pretrial Agreement, # 4 Exhibit Proposed Order, # 5 Errata Index)(McMurray, Benjamin) (Entered: 01/03/2025) |
| 01/03/2025 | 184 | MOTION to Expedite *Briefing* by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # 1 Text of Proposed Order)(McMurray, Benjamin) (Entered: 01/03/2025) |
| 01/03/2025 | | MINUTE ORDER directing the government to file its opposition to 182 Motion to Reopen Case and 184 Motion to Expedite Briefing by no later than 8:00 pm January 3, 2025. Petitioner shall file any reply by no later than 12:00 pm on January 4, 2025. Signed by Judge Emmet G. Sullivan on 1/3/2025. (lcegs1) (Entered: 01/03/2025) |
| 01/03/2025 | | Set/Reset Deadlines: Government's Responses due by 1/3/2025. Petitioner's Replies due by 1/4/2025. (zalh) (Entered: 01/03/2025) |
| 01/03/2025 | 185 | RESPONSE re 184 MOTION to Expedite *Briefing* filed by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN. (Warden, Andrew) (Entered: 01/03/2025) |
| 01/03/2025 | 186 | RESPONSE re 182 MOTION to Reopen Case filed by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN. (Warden, Andrew) (Entered: 01/03/2025) |
| 01/04/2025 | 187 | REPLY to opposition to motion re 184 Motion to Expedite, 182 Motion to Reopen Case filed by NASHWAN AL–RAMER ABDULRAZZAQ. (McMurray, Benjamin) (Entered: 01/04/2025) |
| 01/04/2025 | | |

| | | |
|---|---|---|
| | | ORDER granting <u>182</u> Motion to Reopen Case. The Clerk of Court is directed to reopen this case. The Court will schedule further proceedings as necessary following its resolution of <u>183</u> Motion for Preliminary Injunction. Signed by Judge Emmet G. Sullivan on 1/4/2025. (lcegs1) (Entered: 01/04/2025) |
| 01/04/2025 | | MINUTE ORDER granting <u>184</u> Petitioner's Motion for Expedited Briefing. The following deadlines shall govern this matter: (1) Respondents shall respond to Petitioner's <u>183</u> Motion for Preliminary Injunction by 5:30 pm on January 8, 2025; and (2) Petitioner shall file his Reply by 5:30 pm on January 9, 2025. The motion hearing shall take place on January 10, 2025 at 2:00 pm. The Court will inform the parties of the location of the motion hearing in a subsequent Minute Order. It is FURTHER ORDERED that Respondents shall file a Notice on the docket by no later than 5:30 pm on January 5, 2025 informing the Court of the date they plan to transfer Petitioner. Signed by Judge Emmet G. Sullivan on 1/4/2025. (lcegs1) (Entered: 01/04/2025) |
| 01/05/2025 | <u>188</u> | SEALED DOCUMENT filed by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN(This document is SEALED and only available to authorized persons.)(Henry, Terry) (Entered: 01/05/2025) |
| 01/06/2025 | | Set/Reset Deadlines/Hearings: Respondents Response To Petitioner's <u>2</u> Motion for Preliminary Injunction due not later than 5:30 pm on 1/8/2025. Petitioner Reply due no later than 5:30pm On 1/9/2025. Motion Hearing set for 1/10/2025 at 2:00 PM before Judge Emmet G. Sullivan. (mac) (Entered: 01/06/2025) |
| 01/08/2025 | <u>189</u> | Unopposed MOTION to Amend/Correct Order, *Protective Order* by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN. (Attachments: # <u>1</u> Exhibit 1– Redline of Prior Order, # <u>2</u> Text of Proposed Order Revised Protective Order)(Henry, Terry) (Entered: 01/08/2025) |
| 01/08/2025 | <u>190</u> | ORDER granting <u>189</u> Motion to Amend/Correct Protective Order. Signed by Judge Emmet G. Sullivan on 1/8/2025. (lcegs1) (Entered: 01/08/2025) |
| 01/08/2025 | <u>191</u> | SEALED OPPOSITION filed by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN. re <u>183</u> Motion for Preliminary Injunction, (Attachments: # <u>1</u> Exhibit Declaration, # <u>2</u> Exhibit Petitioner's Stipulation of Facts, # <u>3</u> Exhibit Declaration, # <u>4</u> Text of Proposed Order, # <u>5</u> Certificate of Service)(Wiltsie, Ronald) (Entered: 01/08/2025) |
| 01/09/2025 | <u>192</u> | NOTICE *−−Supplemental Response to Court's Jan. 4, 2025 Minute Order* by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN re Order on Motion to Expedite,, (Henry, Terry) (Entered: 01/09/2025) |
| 01/09/2025 | | MINUTE ORDER informing the parties that the hearing scheduled for January 10, 2025 at 2:00 pm will take place in Courtroom 25A. Signed by Judge Emmet G. Sullivan on 1/9/2025. (lcegs1) (Entered: 01/09/2025) |
| 01/09/2025 | | MINUTE ORDER directing Petitioner to file his reply briefing forthwith. Signed by Judge Emmet G. Sullivan on 1/9/2025. (lcegs1) (Entered: 01/09/2025) |
| 01/09/2025 | <u>193</u> | REPLY to opposition to motion re <u>183</u> Motion for Preliminary Injunction, filed by NASHWAN AL–RAMER ABDULRAZZAQ. (Attachments: # <u>1</u> Exhibit Letter from |

| | | |
|---|---|---|
| | | attorney in Iraq, # 2 Exhibit Letter from Amnesty International, # 3 Exhibit Letter from former CIA analyst)(McMurray, Benjamin) (Entered: 01/09/2025) |
| 01/09/2025 | | MINUTE ORDER: Directing Respondents to file a Sur–Reply addressing any issues raised for the first time in 193 Reply by 12:00 pm on January 10, 2025. There will be no further pleadings. |
| | | It is FURTHER ORDERED that the hearing scheduled for January 10, 2025 is cancelled. The Court has determined that a hearing is not necessary for its decision on Petitioners Motion for Preliminary Injunction. Respondents are FURTHER ORDERED to submit the classified information referred to in 192 Respondents Supplemental Response to Courts January 4, 2024 Minute Order to the Litigation Security Group for filing with the Court FORTHWITH, and no later than 12:00 pm on January 10, 2025. Signed by Judge Emmet G. Sullivan on 1/9/2025. (lcegs3) (Entered: 01/09/2025) |
| 01/10/2025 | 194 | NOTICE *of Filing of Ex Parte Classified Information In Response to the Court's Minute Order Dated January 9, 2024* by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN (Warden, Andrew) (Entered: 01/10/2025) |
| 01/10/2025 | 195 | SEALED OPPOSITION filed by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN. re 183 Motion for Preliminary Injunction, (Henry, Terry) (Entered: 01/10/2025) |
| 01/10/2025 | 196 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN. Attorney Ronald James Wiltsie terminated. (Wiltsie, Ronald) (Entered: 01/10/2025) |
| 01/11/2025 | 197 | ORDER granting 183 Motion for Preliminary Injunction. Signed by Judge Emmet G. Sullivan on 1/11/2025. (lcegs3) (Entered: 01/11/2025) |
| 01/11/2025 | 198 | SEALED MEMORANDUM OPINION re Order 197 . (This document is SEALED and only available to authorized persons.) Signed by Judge Emmet G. Sullivan on 1/11/2025. (zlsj) (Entered: 01/11/2025) |
| 01/11/2025 | | MINUTE ORDER directing the government to file public versions of its sealed opposition filings, ECF No. 191 and ECF No. 195 , on the docket for this case FORTHWITH and by no later than 7 days of todays date. Signed by Judge Emmet G. Sullivan on 1/11/2025. (lcegs3) (Entered: 01/11/2025) |
| 01/18/2025 | 199 | NOTICE *of Filing of Public Versions* by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN (Attachments: # 1 Memorandum Opinion_Public, # 2 PI Opposition_Public, # 3 PI Sur–reply_Public)(Henry, Terry) (Entered: 01/18/2025) |
| 01/24/2025 | 200 | NOTICE of Appearance by Julia Alexandra Heiman on behalf of DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN (Heiman, Julia) (Entered: 01/24/2025) |
| 02/13/2025 | | MINUTE ORDER directing the parties to file a proposed scheduling order by no later than February 27, 2025. Signed by Judge Emmet G. Sullivan on 2/13/2025. (lcegs1) (Entered: 02/13/2025) |
| 02/13/2025 | | |

| | | Set/Reset Deadlines: Proposed Scheduling Order due by 2/27/2025. (mac) (Entered: 02/13/2025) |
|---|---|---|
| 02/24/2025 | 201 | Unopposed MOTION for Extension of Time to File *Proposed Briefing Schedule* by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN. (Attachments: # 1 Text of Proposed Order)(Heiman, Julia) (Entered: 02/24/2025) |
| 02/25/2025 | | MINUTE ORDER granting 201 unopposed motion for extension of time. The parties shall submit a proposed scheduling order by no later than March 28, 2025. Signed by Judge Emmet G. Sullivan on 2/25/2025. (lcegs1) (Entered: 02/25/2025) |
| 02/26/2025 | | Set/Reset Deadlines: Parties Proposed Scheduling Order due by 3/28/2025. (mac) (Entered: 02/26/2025) |
| 03/11/2025 | 202 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 198 Sealed Memorandum Opinion, 197 Order on Motion for Preliminary Injunction by DONALD J. TRUMP, JAMES N. MATTIS, HARVEY RISHIKOF, DAVID CULPEPPER, EDWARD B. CASHMAN. Fee Status: No Fee Paid. Parties have been notified. (Heiman, Julia) (Entered: 03/11/2025) |
| 03/12/2025 | 203 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 202 Notice of Appeal to DC Circuit Court, (zdp) Modified docket text on 3/12/2025 (zdp). (Entered: 03/12/2025) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NASHWAN AL-RAMER ABDULRAZZAQ (ISN 10026), <br><br> Petitioner, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Respondents. | No. 17-cv-1928 (EGS) |
| NASHWAN AL-TAMIR (ISN 10026), <br><br> Petitioner, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Respondents. | No. 25-cv-0015 (EGS) |

**NOTICE OF APPEAL**

NOTICE is hereby given that Respondents in the above-referenced matters hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the Order and Memorandum Opinion entered on January 11, 2025, No. 17-cv-1928, ECF Nos. 197, 198; No. 25-cv-0015, ECF Nos. 20, 21.

Dated: March 11, 2025                    Respectfully submitted,

                                         YAAKOV M. ROTH
                                         Acting Assistant Attorney General

                                         ALEXANDER K. HAAS
                                         Director

1

TERRY M. HENRY
Assistant Branch Director


/s/ *Julia A. Heiman*
JULIA A. HEIMAN (D.C. Bar No. 986228)
Senior Counsel
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street, NW,
Washington, D.C. 20530
Tel: 202-616-8480
Email:  julia.heiman@usdoj.gov

*Counsel for Respondents*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NASHWAN AL-RAMER ABDULRAZZAQ

       Petitioner,

     v.

DONALD J. TRUMP, *et al.*,

       Respondents.

Civil Action No. 17-1928 (EGS)

NASHWAN AL-TAMIR

       Petitioner,

     v.

JOSEPH R. BIDEN, *et al.*,

       Respondents.

Civil Action No. 25-15 (EGS)

**ORDER**

For the reasons stated in the accompanying Memorandum Opinion filed on this day, it is hereby

**ORDERED** that Petitioner's Motion for Preliminary Injunction, ECF No. 183 in 17-cv-1928 and ECF No. 2 in 25-cv-15, is **GRANTED**; and it is further

**ORDERED** that Respondents and their officers, agents, servants, employees, attorneys, and all other persons in active concern or participation with them are **HEREBY ENJOINED** from

1

transferring Mr. al-Tamir to Iraq without his consent until the pending claims are resolved; and it is further

**ORDERED** that the parties shall post a public version of the Memorandum Opinion accompanying this Order on the docket for this case **FORTHWITH** and by no later than within 7 days of the date of this Order.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**January 11, 2025**

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS     Document 198 *SEALED*     Filed 01/11/25     Page 1 of 61

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASHWAN AL-RAMER ABDULRAZZAQ<br><br>　　　　Petitioner,<br><br>　　v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>　　　　Respondents. | Civil Action No. 17-1928 (EGS)<br>~~UNDER SEAL~~ |

| | |
|---|---|
| NASHWAN AL-TAMIR<br><br>　　　　Petitioner,<br><br>　　v.<br><br>JOSEPH R. BIDEN, *et al.*,<br><br>　　　　Respondents. | Civil Action No. 25-15 (EGS)<br>~~UNDER SEAL~~ |

MEMORANDUM OPINION

Nashwan al-Ramer Abdulrazzaq, also known as Nashwan al Tamir ("Mr. al-Tamir")[1] has been detained or imprisoned at U.S. Naval Base Guantanamo Bay ("Guantanamo") since 2007. Pending before the Court is Mr. al-Tamir's motion for preliminary injunction to prevent the government from transferring him to

---

[1] Mr. al-Tamir was "initially charged and prosecuted in the military tribunal under the name 'Abd al Hadi al-Iraqi' which is not his actual name. He is identified on his Iraqi citizenship card as Nashwan al-Ramer Abdulrazzaq. His family name—the name he generally uses with friends and family—is Nashwan al-Tamir . . . ." Pet., ECF No. 1 in 25-cv-15 at 1 n.1.

1

UNCLASSIFIED//FOR PUBLIC RELEASE

Iraq

███████████████████████████████████—until the Court

considers the claims raised in his two pending habeas petitions.

Mot. for Prelim. Inj., ECF No. 183 in 17-cv-1928; Mot. for

Prelim. Inj., ECF No. 2 in 25-cv-15.[2] These two petitions are:

Mr. al-Tamir's Second Amended Petition in 17-cv-1928 ("Second

Petition"); and Petition in 25-cv-15 ("Third Petition"). *See*

Not. of Filing, ECF No. 43 in 17-cv-1928; Pet., ECF No. 1 in 25-

cv-15.[3] Respondents, the government ("government"), oppose Mr.

al-Tamir's motions. Opp'n to Mot. for Prelim. Inj. ("Opp'n"),

ECF No. 15 in 25-cv-15; Opp'n to Mot. for Prelim. Inj.

("Opp'n"), ECF No. 191 in 17-cv-1928.

Upon careful consideration of Petitioner's motions,

Respondents' oppositions, and the replies and sur-replies

thereto; the applicable law; and for the reasons discussed

below, the Court **GRANTS** Mr. al-Tamir's motions.

---

[2] When citing electronic filings throughout this opinion, the
Court cites to the ECF header page number, not the original page
number of the filed document.
[3] Mr. al-Tamir filed his first habeas petition in 2009. *See* Pet.,
ECF No. 1 in 25-cv-15 ¶ 13 (citing *Abdulrazzaq v. Obama*, 09-cv-
1462-EGS (D.D.C.)). At the request of Mr. al-Tamir's former
counsel, the Indiana Federal Community Defenders, this Court
entered a Stipulation and Order dismissing Mr. al-Tamir's
original Petition without prejudice because his counsel had to
withdraw due to budget sequestration. *See id.* ¶¶ 12-15.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

I.    **Background**

    A. **Mr. al-Tamir's Detention and Imprisonment**

    Mr. al-Tamir is a citizen of both Iraq and Afghanistan.
Pet., ECF No. 1 in 25-cv-15 ¶ 5. In 2006, the CIA captured him
and held him at a black site until he was transferred to
Guantanamo in April 2007. *Id.* ¶¶ 11, 12. Because Mr. al-Tamir is
now considered a "prisoner" at Guantanamo, he is incarcerated in
more restrictive conditions. *Id.* ¶¶ 49-57. According to Mr. al-
Tamir, ███████████████████████████████████████████

███████████████████████████████████ not able to attend

Friday prayer services, and has limited access to assistance
getting around. *Id.* Mr. al-Tamir asserts that his "tier" is not
retrofitted to accommodate his disability. *Id.; but see* Decl. of
Senior Medical Officer, Ex. 3, ECF No. 15-3 in 25-cv-15 at 6.

    Both the government and Mr. al-Tamir agree that he has
various medical conditions, but they dispute the adequacy of his
medical care at Guantanamo and the severity of his future
medical needs. Mr. al-Tamir asserts that he has "suffered
tremendously" at Guantanamo "as a result of chronic and
worsening degradation of his spine." Mot. for Prelim. Inj., ECF
No. 2 in 25-cv-15 at 2; *see also* Pet., ECF No. 1 in 25-cv-15 ¶
17-19. His "acute medical diagnoses . . . include[] degenerative
spinal disease, an osteoporotic spine, and a history of multiple
spinal surgeries . . . ." Mot. for Prelim. Inj., ECF No. 2 in

UNCLASSIFIED//FOR PUBLIC RELEASE

25-cv-15 at 3. According to Mr. al-Tamir, the government has "aggravated [his] medical issues by subjecting him to negligent medical care, including the unavailability of needed medical devices (such as an MRI machine) and adequately trained surgeons and medical specialists at Guantanamo." *Id.* The government describes how it has met Mr. al-Tamir's medical needs. *See* Opp'n, ECF No. 15 in 25-cv-15 at 15–18.

Mr. al-Tamir notes that his "inadequate medical care was the subject of extensive litigation in the military commission and this [C]ourt." *Id.* Indeed, this Court previously considered Mr. al-Tamir's medical conditions when it rejected his Eighth Amendment claim in his Second Petition because Mr. al-Tamir failed to show "deliberate indifference on the part of Guantanamo medical officers." Mem. Op., ECF No. 175 in 17-cv-1928 at 13. This Court also denied Mr. al-Tamir's request for prospective relief due to the numerous medical procedures he had received and observed that "[Mr. al-Tamir] . . . acknowledges that he has received intensive medical attention since just before the petition was filed and that the intensive medical attention has continued since that time." *Id.* at 17.

Mr. al-Tamir and the government dispute his current medical situation. Mr. al-Tamir claims that "[t]o this day, Mr. al-Tamir requires multiple daily medications, expert medical care, neurological imaging, and an extensive number of medical devices

4
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 5 of 61

. . . just so he can perform daily functions." Mot. for Prelim.
Inj., ECF No. 2 in 25-cv-15 at 2. The government asserts that
"[o]ther than his spinal issues, [Mr. al-Tamir] is generally in
good health." Opp'n, ECF No. 15 in 25-cv-15 at 18.

### B. Military Commission Proceedings

The Military Commissions Act ("MCA") provides military
commissions with the '"jurisdiction to try 'alien unprivileged
enemy belligerent[s]' [10 U.S.C.] § 948c, for 'any offense made
punishable' by the MCA, 'whether such offense was committed
before, on, or after September 11, 2001,' *id.* § 948d."' Mem.
Op., ECF No. 175 at 24 (quoting *In re Al-Nashiri*, 835 F.3d 110,
115 (D.C. Cir. 2016)).

Beginning in 2013, the government filed charges against Mr.
al-Tamir in a military commission. *See* Second Am. Pet., ECF No.
164 in 17-cv-1928 at 9; Pet., ECF No. 1 in 25-cv-15 ¶¶ 14-16.[4]
The government added additional charges on August 28, 2013 and
on February 3, 2014. Pet., ECF No. 1 in 25-cv-15 ¶¶ 14-16
(citations omitted). On June 2, 2014, the Convening Authority
referred the February 3, 2014 charges for trial by a military
commission and dismissed the 2013 charges. *Id.* Mr. al-Tamir
raised constitutional and statutory challenges to the military

---

[4]   A "Convening Authority," an official at the Department of
Defense, refers a case to trial. *See In re Al-Nashiri*, 835 F.3d
110, 112 (D.C. Cir. 2016).

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

commission proceedings that this Court rejected or held in abeyance pending resolution of those proceedings. *See* Pet., ECF No. 1 in 17-cv-1928; Mem. Op., ECF No. 175 in 17-cv-1928.

In 2022, Mr. al-Tamir entered into a pretrial agreement ("Plea Agreement") pursuant to which he would plead guilty to four counts[5] of his military commission charges and participate in an "extensive debrief" in exchange for a prison sentence not to exceed ten years. Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 3 (citing App. to Pretrial Agreement, Ex. 2, ECF No. 2-2 at 1). The government also promised to "pursue transfer to a third-party sovereign nation" and that it would consider Mr. al-Tamir's healthcare needs in its transfer efforts:

> 19. I shall join the Government in requesting that the Military Judge delay the sentencing proceedings in my case, but no more than two (2) years from the date the Military Judge accepts my guilty plea, in order to pursue transfer to a third-party sovereign nation. I understand that the Convening Authority will recommend a transfer to a third-party sovereign nation consistent with this pretrial agreement, Appendix A, and applicable United States law, with the understanding that the third-party sovereign nation will agree to honor the terms of this agreement and my continued custody after transfer, if it occurs. Should my custody be transferred to a

---

[5] The government represents that Mr. al-Tamir pled guilty to five counts but Mr. al-Tamir claims it was four counts. His Plea Agreement provides: "and in consideration of the agreement by the Convening Authority to approve a sentence in accord with the limitations set forth in Appendix A, I offer to plead guilty to Charges II, III, IV, and V of the charges and specifications." Plea Agreement, Ex. 1, ECF No. 2-1 in 25-cv-15 at 1.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

> third-party sovereign nation, I understand
> that the continued service of any portion of
> my sentence will be under the conditions, laws
> and procedures as established by such third-
> party sovereign nation and its appropriate
> governing entity willing to accept my request
> for transfer. Consideration of my healthcare
> needs will be afforded in efforts to effect a
> transfer. I also understand that the Convening
> Authority has no power under the law to
> approve a transfer to a third-party sovereign
> nation. I understand that failure to effect
> transfer to a third-party sovereign nation
> will not void or make voidable this pretrial
> agreement, and I would remain bound by this
> pretrial agreement.

Pretrial Agreement, Ex. 1, ECF No. 2-1 in 25-cv-15 at 5; *see
also* Add. to Pretrial Agreement, Ex. 3, ECF No. 2-3 in 25-cv-15
at 3 (delaying sentencing "until June 2024 . . . .").

Mr. al-Tamir represents that the government's promises to
make efforts to transfer him to a third-party country and take
into account his healthcare needs were "critical" to him. Mot.
for Prelim. Inj., ECF No. 2 in 25-cv-15 at 3. He contends that
as a "convicted military combatant and a practicing Sunni, he
could not be safely returned to Iraq or imprisoned there." *Id.*
Further, he claims that transfer to Iraq, a country that "could
not or would not provide adequate medical care[,] would be
inhumane and likely fatal." *Id.* The importance of this provision
is why Mr. al-Tamir agreed to delay sentencing, so that the
government could find a suitable country. *See id.* Critically,
Mr. al-Tamir reserved the right to withdraw from his plea

UNCLASSIFIED//FOR PUBLIC RELEASE

agreement prior to sentencing. *See id.; see also* Offer for
Pretrial Agreement, Ex. 1, ECF No. 2-1 in 25-cv-15 at 6.

The government disagrees that any provision of the Plea
Agreement bars it from transferring Mr. al-Tamir to Iraq. Opp'n,
ECF No. 15 in 25-cv-15 at 14.

### C. **Transfer Discussions and Decision**

Mr. al-Tamir claims that leading up to his sentencing, the
government "consistently . . . acknowledged that [he] could not
safely return to Iraq." Mot. for Prelim. Inj., ECF No. 2 at 4.
He cites to a declaration from his Department of Defense
counsel, Susan Hensler ("Ms. Hensler"), that describes these
communications. *See* Pet., ECF No. 1 in 25-cv-15 ¶¶ 58-98 (citing
Hensler Decl., Ex. 3, ECF No. 1-3). The government contends that
because Mr. al-Tamir agreed that his Plea Agreement was the
*entire* agreement, these discussions do not change its meaning.
Opp'n, ECF No. 15 in 25-cv-15 at 38.

Ms. Hensler primarily communicated with Tina Kaidanow, who
became the official envoy to Guantanamo in late 2022. *See id.*
(communicating that Mr. al-Tamir could not return to Iraq or
Afghanistan, and that his health conditions limited the possible
transfer countries). Ms. Hensler highlighted that Mr. al-Tamir
could "withdraw his guilty plea without penalty" if "the
government is unable to arrange his transfer," which she
described as "an outcome that neither party wants." *Id.* ¶ 62. In

8
UNCLASSIFIED//FOR PUBLIC RELEASE

Case 1:17-cv-01928-EGS    Document 203    Filed 03/12/25    Page 43 of 95
USCA Case #25-5071    Document #2106407    Filed: 03/19/2025    Page 43 of 95
UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 9 of 61

response, Ms. Kaidanow informed Ms. Hensler that the government was "working hard to find a location for transfer that would "meet all the requirements needed to bring this case to sentencing." *Id.* ¶ 66 (citing Hensler Decl., Ex. 3, ECF No. 1-3 at 6-7). Ms. Kaidanow remarked that she "doubt[ed] very much, in that vein, [the government] would aim for a country [it] feared Mr. [al-Tamir] would reject." *Id.* (citing Hensler Decl., Ex. 3, ECF No. 1-3 at 6-7). Ms. Hensler met regularly with members of Ms. Kaidanow's staff and the government "continued to express commitment to a third-country resettlement but said they could not share many details about those efforts." *Id.* ¶ 67 (citing Hensler Decl., Ex. 3, ECF No. 1-3 at 7).

As the June 2024 sentencing proceedings approached, the lack of information concerned Mr. al-Tamir, so Ms. Hensler met with Ms. Kaidanow to convey his concerns and consideration of whether he should withdraw his plea. *Id.* ¶¶ 68, 69 (citing Hensler Decl., Ex. 3, ECF No. 1-3 at 7). Ms. Kaidanow confirmed that the government was still committed to finding a transfer country that addressed Mr. al-Tamir's medical needs. *Id.* ¶ 69 (citing Hensler Decl., Ex. 3, ECF No. 1-3 at 7) (noting that the conflict in Gaza complicated the matter of identifying a transfer country). Ms. Hensler shared these assurances with Mr. al-Tamir, and Mr. al-Tamir decided to go forward with sentencing. *Id.* ¶ 70 (citing Hensler Decl., Ex. 3, ECF No. 1-3

at 7). Ms. Kaidanow promised that she would continue to "work as diligently as possible to find a third country willing to accept [Mr. al-Tamir]." *Id.* ¶ 77 (citing Hensler Decl., Ex. 3, ECF No. 1-3 at 7-8). Ms. Kaidanow unexpectedly passed away on October 16, 2024. *Id.* ¶ 73. According to Mr. al-Tamir, the Secretary of State left the envoy position unfilled and only a few career State Department employees remained to handle the Guantanamo portfolio. *Id.*

Without first informing Mr. al-Tamir or his counsel, the government notified Congress ▮▮▮▮▮▮▮▮▮▮ that it planned to transfer Mr. al-Tamir to Iraq. Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 4. A few days later, on December 17, 2024, State Department officials informed Mr. al-Tamir's counsel about the transfer decision ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ Pet., ECF No. 1 in 25-cv-15 ¶¶ 78-80 (citing Hensler Decl., Ex. 3, ECF No. 1-3 at 9). Ms. Hensler claims that "when pressed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ ▮▮▮▮ The government maintains that ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ . . . ." Opp'n, ECF No. 15 in 25-cv-15 at 21.

The government informed Ms. Hensler that Mr. al-Tamir would

████████████████████████████████████████████████████

████████████████████████████████████████████

Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 4. The

government officials said that they would ██████████████

████████████████████████████████████████████

Pet., ECF No. 1 in 25-cv-15 ¶ 85 (citing Hensler Decl., Ex. 3,

ECF No. 1-3 at 9). The government ████████████████

████████████████████████████████████████████

████████. . . ." Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at

4. Mr. al-Tamir objected to the transfer as unconstitutional and

violative of multiple treaties. *Id.* Nevertheless, the government

plans to transfer him to ████████████████████████

Notice, ECF No. 11 in 25-cv-15; Opp'n, ECF No. 15 in 25-cv-15 at

7 (Mr. al-Tamir's ████████████████████████████████

**D. Conditions in Iraq**

The government asserts that the State Department ████

████████████████████████████████████████████████

████████████████████████████████████ ensure ████████

████████ transfer is consistent with the Government's human

treatment policy not to transfer detainees to countries where

they are likely to be tortured, consistent with the [Foreign

Affairs Reform and Restructuring Act]." Sur-Reply, ECF No. 19 in

25-cv-15 at 9 (citing Richard Decl., Ex. 1, ECF No. 15-1 in 25-cv-15 ¶¶ 3-15).

Mr. al-Tamir has provided reports and letters in support of his concerns about conditions in Iraq. Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 5–7; Reply, ECF No. 17 in 25-cv-15. The State Department detailed the following conditions in 2023:

> arbitrary or unlawful killings, including extrajudicial killings; enforced disappearance; torture and cruel, inhuman, and degrading treatment or punishment by government officials; *harsh and life-threatening prison conditions*; arbitrary arrest or detention; arbitrary or unlawful interference with privacy; punishment of family members for offenses allegedly committed by an individual; serious abuses in a conflict, including attacks resulting in civilian deaths and harm; . . . restrictions on freedom of movement, including forced returns of internally displaced persons to locations where they faced threats to their lives and freedom; refoulement of refugees to a country where they would face torture or persecution, including serious harm such as a threat to life or freedom or other mistreatment that would constitute a separate human rights abuse; serious government corruption.

Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 4–5 (citing U.S. State Dept., Bureau of Democracy, Human Rights, and Labor, Iraq 2023 Human Rights Report (20[2]3), available at https://www.state.gov/wp-content/uploads/2024/03/528267_IRAQ-2023-HUMAN-RIGHTS-REPORT.pdf (last visited Jan. 11, 2025) ("2023 DOS Country Report") (emphasis added)).

12

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 13 of 61

Reports from news outlets have provided further details about the danger in Iraqi prisons and jails. *See id.* at 4-6. For example, a June 29, 2024 article from Kurdistan24 highlighted a report from the Iraqi Center for Documenting War Crimes, which discussed "poor conditions under which tens of thousands of detainees are held, with health issues being neglected due to revenge and sectarian motives." *Id.* at 5 (citing Kurdistan24, *Death, torture, delayed visits: inside Iraq's harrowing prison system* (June 29, 2024), available at https://www.kurdistan24.net/en/story/395582/Death,-torture,-delayed-visits:-inside-Iraq%27s-harrowing-prison-system (last visited Jan. 11, 2025)). These reports detail intentional deprivation of medical care, overcrowding, and '"delays in accessing external hospital care due to procedural inefficiencies."' *Id.* at 6 (quoting Shafaq News, Iraqi prisons "Unfit for Human Life," NGO warns (Dec. 29, 2024), available at https://shafaq.com/en/Iraq/Iraqi-prisons-Unfit-for-Human-Life-NGO-warns (last visited Jan. 11, 2025) (emphasis omitted). Mr. al-Tamir claims that because he is Sunni (a minority religion), citizen of Afghanistan, and "an American convict," he is a "prime target for discrimination and violence in an Iraqi prison." *Id.* at 7 (citations omitted).

The government explains that when it is considering whether to transfer Guantanamo detainees, it determines whether it is

13
UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

*more likely than not* that the individual will be tortured in the country to which he may be transferred." Opp'n, ECF No. 15 in 25-cv-15 at 19 (citing Richard Decl., Ex. 1, ECF No. 15-1 in 25-cv-15) (emphasis added). When making this determination, the government considers:

> the treatment the individual is likely to receive upon transfer, taking into account any specific commitments of officials from the foreign government responsible for accepting the transfer of custody of the individual; information or allegations of prior or potential future mistreatment in the receiving State; the receiving State's overall human rights record; any specific risk factors that may be present such as religion or political views; whether similarly situated individuals have been tortured in the receiving State; and the humane treatment assurances provided by the receiving State, including an assessment of the assurances' credibility.

*Id.* at 20. The government claims that in this case:



*Id.* at 21.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 15 of 61

### E. Procedural Background

On January 3, 2025, Mr. al-Tamir filed several motions to
renew his Second Petition, raise new arguments in his Third
Petition, and seek to enjoin the government from transferring
him to Iraq while the Court considers his claims. The Court
granted Mr. al-Tamir's motion to reopen in 17-cv-1928 but
delayed setting further proceedings until it considered the
preliminary injunction. *See* Minute Order (Jan. 4, 2025).[6] The
Court also granted Mr. al-Tamir's motion for expedited briefing.
*See* Minute Order (Jan. 4, 2025).

### II.  Standard of Review

"A plaintiff seeking a preliminary injunction must
establish [1] that he is likely to succeed on the merits, [2]
that he is likely to suffer irreparable harm in the absence of
preliminary relief, [3] that the balance of equities tips in his
favor, and [4] that an injunction is in the public interest."
*Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting

---

[6] The three claims that remain in Mr. al-Tamir's Second Petition
are: (1) discrimination against Mr. al-Tamir on the basis of his
nationality in violation of the equal protection guarantees of
the Fifth Amendment ("equal protection" claim); (2) that the
structure of the military commission process violates the Due
Process Clause of the Fifth Amendment ("conflict-of-interest"
claim); and (3) deprivation of the right to counsel guaranteed
by the Sixth Amendment and the Military Commissions Act
("interference-with-counsel-communications" claim). *See* Pet.,
ECF No. 1 in 17-cv-1928; Am. Pet., ECF No. 34; Notice, ECF No.
43 in 17-cv-1928; Redacted Second Am. Pet., ECF No. 164 in 17-
cv-1928; Mem. Op., ECF No. 175 in 17-cv-1928.

UNCLASSIFIED//FOR PUBLIC RELEASE

*Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). Where
the federal government is the opposing party, the balance of
equities and public interest factors merge. *See Nken v. Holder*,
556 U.S. 418, 435 (2009); *Singh v. Berger*, 56 F.4th 88, 107
(D.C. Cir. 2022). A preliminary injunction is an "extraordinary
remedy that may only be awarded upon a clear showing that the
plaintiff is entitled to such relief." *Winter v. Nat. Res. Def.
Council, Inc.*, 555 U.S. 7, 22 (2008). "The purpose of a
preliminary injunction is merely to preserve the relative
positions of the parties until a trial on the merits can be
held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). In
this Circuit, the four factors have typically been evaluated on
a "sliding scale," such that if "the movant makes an unusually
strong showing on one of the factors, then it does not
necessarily have to make as strong a showing on another factor."
*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92
(D.C. Cir. 2009).

In the wake of the Supreme Court's decision in *Winter v.
Natural Resources Defense Council*, 555 U.S. 7 (2008), "the D.C.
Circuit has suggested that a positive showing on all four
preliminary injunction factors may be required." *Holmes v. FEC*,
71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014); *see also Sherley*, 644
F.3d at 393 ("[W]e read Winter at least to suggest if not to
hold that a likelihood of success is an independent,

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

freestanding requirement for a preliminary injunction.")
(quotation marks omitted). Nonetheless, "the Circuit has had no
occasion to decide this question because it has not yet
encountered a post-*Winter* case where a preliminary injunction
motion survived the less rigorous sliding-scale analysis."
*ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014); *see
also Archdiocese of Washington v. Washington Metro. Area Transit
Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (quotations omitted)
("[T]his court has not yet decided whether [*Winter*] is properly
read to suggest a sliding scale approach to weighing the four
factors be abandoned."); *Changji Esquel Textile Co. Ltd. v.
Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) (quotations
omitted) ("In the past, we have . . . reserved the question
whether the sliding-scale approach remains valid. We follow the
same approach here because, even under the sliding-scale
approach, the movant must raise at least a serious legal
question on the merits."); *cf, Hanson v. District of Columbia*,
120 F.4th 223, 243 (D.C. Cir. 2024) (citations omitted).

**III. Analysis**

　　Mr. al-Tamir has shown that all factors weigh in favor of
granting his requested temporary relief. Neither party asks the
Court to use a sliding scale to evaluate these factors, and the
Court concludes that Mr. al-Tamir prevails under either

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 18 of 61

approach. Before the Court discusses these factors, it addresses some preliminary matters.

### A. Preliminary Matters

#### 1. Jurisdiction

An antecedent question to Mr. al-Tamir's claims is whether this Court has jurisdiction. Title 28 U.S.C. § 2241 permits district courts to grant writs of habeas corpus for "prisoner[s]" who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). In *Boumediene v. Bush*, the Supreme Court held that Congress could not strip federal courts of the ability to consider habeas claims brought by individuals at Guantanamo. 553 U.S. 723 (2008). The D.C. Circuit has rejected the proposition that *Boumediene* only applied to "core" as opposed to "ancillary" habeas rights. *Kiyemba v. Obama*, 561 F.3d 509, 512 (D.C. Cir. 2009) ("Accordingly, we read *Boumediene* to invalidate § 2241(e)(1) with respect to all habeas claims brought by Guantanamo detainees, not simply with respect to so-called "core" habeas claims.").

"[B]ased upon longstanding precedents . . . it is clear that . . . an order barring [a petitioner's] transfer to or from a place of incarceration" is "a proper claim for habeas relief." *Id.* at 513 (citations omitted); *see also Belbacha v. Bush*, 520 F.3d 452, 456 (D.C. Cir. 2008) (holding that a court may "act to

UNCLASSIFIED//FOR PUBLIC RELEASE

preserve the status quo" while a claim related to jurisdiction
to challenge transfer was considered).

The government does not dispute this Court's jurisdiction
to hear Mr. al-Tamir's claims. Opp'n, ECF No. 15 in 25-cv-15.

### 2. Mr. al-Tamir's Status

This case presents issues related to Guantanamo proceedings
that it appears have not yet been addressed: Specifically,
whether and how the rights of a person who was detained at
Guantanamo change when he pleads guilty and are sentenced to
imprisonment for crimes against the United States, and
relatedly, whether and how does this result in a change to the
government's authority.

The government assumes that Mr. al-Tamir has no more rights
than "detainees" at Guantanamo and generally asserts that "[Mr.
al-Tamir] is detained at the United Staes Naval Station,
Guantanamo Bay, Cuba, under the authority of the Authorization
for the Use of Military Force [("AUMF")]." Opp'n, ECF No. 15 in
25-cv-15 at 11. In support, it cites to authority generally
establishing its power to detain people under the AUMF. *Id.* at
11 n.3.[7] When discussing this point further in its Sur-Reply, the

---

[7] At another point in its opposition, the government claims:
"[t]he D.C. Circuit has concluded that Respondents' authority to
transfer a military detainee—even one convicted of war crimes
like Petitioner—is not dependent on any such treaty [under 18
U.S.C. § 4100]." Opp'n, ECF No. 15 in 25-cv-15 at 9. But the
government provides no citation to this authority.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

government asserts that "as a matter of law, [Mr. al-Tamir]
remains a military detainee . . . ." Sur-Reply, ECF No. 19 in
25-cv-15 at 5. It advances an interpretation of the 2012
National Defense Authorization Act ("2012 NDAA") whereby nothing
would change in his status as the government exercised its
authority to: (1) initially detain him under the law of war
until the end of the hostilities authorized by the AUMF have
ended; (2) try them under the 2009 MCA; and then (3) transfer
him to his country of origin. *Id.* at 5-6. According to the
government, throughout all these processes, Mr. al-Tamir would
remain a "wartime detainee." *Id.* The government does not cite to
any authority supporting this interpretation of the 2012 NDAA.
*Id.*

To further support its argument, the government also cites
to the 2009 MCA, which '"establishes procedures governing the
use of military commissions to try alien unprivileged enemy
belligerents for violations of the law of war and other offenses
triable by military commission."' *Id.* at 5 (quoting 10 U.S.C §
948b(a)). The government claims that Mr. al-Tamir's "military
commission proceeding and resulting sentence pursuant to his
plea agreement under the [MCA] do not remove [him] from any
military detention scheme or mean that he somehow should be
treated equivalent to a domestic criminal convict." *Id.* Again,

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

the government cites no authority for this proposition other than its own interpretation of the MCA and 2012 NDAA.

Mr. al-Tamir claims that he "is not a wartime detainee . . . he is a prisoner serving a sentence in a United States facility." Reply, ECF No. 17 in 25-cv-15 at 7. He asserts that by becoming a criminal defendant serving a sentence for offenses against the United States, he has gained protections that have not been recognized for other detainees. *See* Pet., ECF No. 1 in 25-cv-15 at 18 n.3; Reply, ECF No. 17 in 25-cv-17 at 11 ("Mr. al-Tamir's status as a person serving a U.S. prison sentence affords him constitutional protections that those detainees lacked."). As with the government, Mr. al-Tamir cites no authority in support of his position.

Because neither party cites any authority where courts have previously resolved these questions, the Court will begin by reviewing the relevant legal principles.

### 1. Detention Authority at Guantanamo

Shortly after the September 11, 2001 attacks, Congress passed the AUMF, which authorized the President to "use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided in the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

against the United States by such nations, organizations or persons." Authorization for Use of Military Force, Pub. L. No. 107-40, § 3(s), 115 Stat. 224, 224 (Sept. 18, 2001). In *Hamdi v. Rumsfeld*, the Supreme Court interpreted the AUMF to provide detention authority. 542 U.S. 507, 518 (2004) (plurality opinion) (internal quotations omitted) ("[The] detention of individuals falling into the limited category we are considering, for the duration of the particular conflict in which they were captured, is so fundamental and accepted as incident to war as to be an exercise of the necessary and appropriate force Congress has authorized the president to use."). This detention authority was rooted in international law of war principles. *See id.* at 520.

Congress affirmed the President's detention authority in the 2012 National Defense Authorization Act ("NDAA"), providing that: the President has authority to "use all necessary and appropriate force pursuant to the [AUMF] . . . to detain covered persons (as defined in sub-section (b)) pending disposition under the law of war." Nat'l Defense Auth. Act for Fiscal Year 2012, Pub. L. No. 112-81, 125 Stat. 1298 (2012) § 1021(a). "The disposition of a person under the law of war as defined in subsection (a) may include the following:

> (1) Detention under the law of war without trial until the end of the hostilities authorized by the [AUMF].

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 23 of 61

> (2) Trial under Chapter 47A of title 10, United States Code (as amended by the Military Commissions Act of 2009 (title XVIII of Public Law 111-84)).
> (3) Transfer for trial by an alternative court or competent tribunal having lawful jurisdiction.
> (4) Transfer to the custody or control of the person's country of origin, any other foreign country, or any other foreign entity."

*Id.* § 1021(c).

### 2. Military Commission Act

"The MCA provides that military commissions have jurisdiction to try 'alien unprivileged enemy belligerent[s],' [10 U.S.C.] § 948c, for 'any offense made punishable' by the MCA, 'whether such offense was committed before, on, or after September 11, 2001,' id. § 948d." *In re Al-Nashiri*, 835 F.3d at 115. "In the MCA, Congress established an 'integrated' scheme dictating how enemy belligerents are to be tried and obtain appellate review . . . ." *Id.* at 122. That scheme establishes "procedural protections and rigorous review mechanisms for military commissions." *Id.* at 120. The "significant procedural and evidentiary safeguards include "the right to be represented by counsel, 10 U.S.C. § 949c, be presumed innocent, *id.* § 949*l*, obtain and offer exculpatory evidence, *id.* § 949j, call witnesses on his behalf, *id.* and challenge for cause any of the members of the military commission and the military judge, *id.* § 949f." *Id.* at 123.

UNCLASSIFIED//FOR PUBLIC RELEASE

The "rigorous review mechanisms" include:

> trial with a military judge presiding and a "jury" that, in capital cases, generally consists of twelve military officers known as "members" of the military commission. 10 U.S.C. §§ 948m, 949m(c). If he is convicted, the convening authority—the Defense Department official who initially referred the case to trial—may review the guilty finding and set it aside, or reduce it to a finding of guilty of a lesser-included offense. *Id.* § 950b. The convening authority must review a sentence to approve, disapprove, commute, or suspend it in whole or in part. *Id.* A guilty finding, as modified by the convening authority, will then be reviewed by the CMCR unless the defendant properly waives this right of review. *Id.* §§ 950f, 950c. The CMCR is composed of both military and civilian judges and has the power to review factual and legal questions alike. *Id.* § 950f. The defendant may appeal the CMCR's decision to our court, and we are empowered to review all questions of law, including the sufficiency of the evidence. *Id.* § 950g. Finally, our ruling can be challenged via petition for writ of certiorari in the Supreme Court. *Id.* § 950g(e).

*Id.*

### 3. Constitutional Rights for Non-Citizens

It has been long established that non-citizens are entitled to constitutional protections in certain circumstances. *See e.g.*, *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) ("The Fourteenth Amendment to the Constitution is not confined to the protection of citizens. . . . These provisions are universal in their application, to all persons within the territorial jurisdiction . . . ."); *but see Dep't of Homeland Security v.*

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

*Thuraissigiam*, 591 U.S. 103, 139–40 (2020) (internal quotations omitted) (holding that a non-citizen who "succeeded in making it 25 yards into U.S. territory before he was caught" was "on the threshold" and not entitled to due process). This includes access to constitutional protections in criminal proceedings. *See Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("Applying this reasoning to the 5th and 6th Amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection guaranteed by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.").

### 4. Constitutional Protections at Guantanamo

Courts have intentionally left open the extent of constitutional protections non-citizens under military authority at Guantanamo hold. *Cf. Hamdi*, 542 U.S. at 532 (recognizing due process rights for American citizens at Guantanamo). As recently as 2023, the *en banc* D.C. Circuit has continued to hold that this question remains open and is not foreclosed by precedent. *Al-Hela v. Biden*, 66 F.4th 217, 225–28 (D.C. Cir. 2023) (*en banc*) ("[W]hether the Due Process Clause applies to a habeas petition filed by a foreign national detained at [Guantanamo] as

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

an alleged military combatant is a question that the Supreme Court has not yet answered.").

One of the main arguments against applying the Due Process Clause to non-citizens at Guantanamo is that constitutional rights are unavailable outside the "territorial sovereignty" of the United States. *Id.* at 249 (quotations omitted) (rejecting dissent's argument). But, as the D.C. Circuit has discussed, such an approach would "run headlong into *Boumediene's* explicit rejection of the view that the Constitution, as applied to non-U.S. citizens, 'necessarily stops where de jure sovereignty ends,' at least where the United States, 'by virtue of its complete jurisdiction and total control over [a territory], maintains de facto sovereignty over th[at] territory.'" *Id.* (quoting *Boumediene*, 553 U.S. at 755); *see also id.* at 248–49 (citing *Boumediene*, 553 U.S. at 763) ( "*Boumediene* made clear, *Eisentrager* should not be read to foreclose constitutional claims of non-U.S. citizens outside U.S. sovereign territory under a 'bright-line test' based solely on *de jure* territorial sovereignty."). Indeed, the Supreme Court held in *Rasul v. Bush*:

> By the express terms of its agreements with Cuba, the United States exercises "complete jurisdiction and control" over the Guantanamo Bay Naval Base, and may continue to exercise such control permanently if it so chooses . . . . Respondents themselves concede that the habeas statute would create federal-court jurisdiction over the claims of an American citizen held at the base . . . . Considering

UNCLASSIFIED//FOR PUBLIC RELEASE

> that the statute draws no distinction between
> Americans and aliens held in federal custody,
> there is little reason to think that Congress
> intended the geographical coverage of the
> statute to vary depending on the detainee's
> citizenship . . . . Aliens held at the base,
> no less than American citizens, are entitled
> to invoke the federal courts' authority under
> § 2241.

*Rasul v. Bush*, 542 U.S. 466, 480–81 (2004).

### 5. Determination of Mr. al-Tamir's Status

Because of the lack of authority, the Court declines to accept the government's position that despite being subjected to MCA proceedings and serving a sentence imposed from this process, Mr. al-Tamir has no different status or protections than individuals who are detained, without charge or trial, for the duration of hostilities. The Court also does not accept Mr. al-Tamir's position that he is necessarily entitled to all protections that criminal defendants have in non-military proceedings. At this juncture, and in view of the expedited nature of this proceeding, the Court need not decide the full impact of Mr. al-Tamir's status as a person convicted of offenses against the United States, as part of the MCA process, and serving a prison sentence based on this conviction. Based on the principles discussed above, the Court concludes that for purposes of its preliminary injunction analysis, the government has not shown its interpretation necessarily prevails; rather

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

other principles and authority support an alternative
interpretation.

### 3. Status Quo

Finally, because the purpose of preliminary injunctions is
to preserve the status quo, the Court acknowledges that the
status quo in this case strongly favors Mr. al-Tamir. The status
quo would keep Mr. al-Tamir at Guantanamo, serving his U.S.-
imposed sentence. The Court addresses the irreparable harm and
balance of equities below, but notes at the outset that
transferring Mr. al-Tamir to Iraq would be a significant shift.
*Compare Aamer*, 742 F.3d at 1043–44 (risk of enjoining the
government from force-feeding is that petitioners could die from
hunger, but "if it was later determined that force-feeding as
practiced at Guantanamo violates petitioners' rights,
petitioners would suffer . . . but they would ultimately be able
to engage in an uninterrupted hunger strike as they wish.");
*Sherley*, 644 F.3d at 398.

### B. Irreparable Harm

The strongest factor in support of granting Mr. al-Tamir's
motion is that he likely will suffer irreparable harm if the
Court does not temporarily enjoin his transfer. As discussed in
detail below, the harm is twofold: (1) once transferred, Mr. al-
Tamir may lose access to review of any claims in the U.S. legal
systems; and (2) Mr. al-Tamir may be tortured and/or die in an

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

Iraqi prison, with no recourse for relief in the country that

caused his imprisonment.

As to the point, in the context of upholding a preliminary

injunction related to transfer of a U.S. citizen in Iraq, the

D.C. Circuit has remarked:

> [A]n initial point bears noting: the transfer
> of a citizen to another country's custody,
> unlike continued detention of that citizen, is
> irrevocable. Once the Executive relinquishes
> custody of an American citizen to another
> country, our government, and our laws—
> including our law's habeas guarantee, which a
> detainee can use to seek relief from detention
> over time—would be unavailable to [him],
> perhaps in perpetuity. Decisions about the
> duration and conditions of [his] custody, and
> about the availability to [him] of a means of
> challenging [his] confinement, would be
> entirely up to the detaining sovereign.

*Doe v. Mattis*, 928 F.3d 1, 17–18 (D.C. Cir. 2019); *see also id.*

at 22 ("Doe, wishing to avoid that irrevocable change in his

station [a forcible transfer that would render him devoid of any

oversight or recourse to the United States] objects to the

proposed transfer . . . . No more is required to demonstrate

that he would face irreparable injury if he were involuntarily

(and irreversibly) handed over to [the other country] in

violation of his constitutional rights.").

The government does not directly address this argument. At

best, it claims—when discussing another preliminary injunction

factor—that Mr. al-Tamir "is incorrect that no potential avenue

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

exists in the military-commission system for Petitioner to challenge an alleged breach of the plea agreement and its effect on his sentence." Opp'n, ECF No. 15 in 25-cv-15 at 40 (discussing *Khadr v. United States*, 67 F.4th 413 (D.C. Cir. 2023)). But *Khadr* does not make the government's point. First, it addresses only whether someone who entered a plea agreement as part of military commission proceedings can raise a challenge to that plea agreement, which does not reach all of Mr. al-Tamir's claims here. *See id.* Second, *Khadr* does not show that any U.S. judicial body actually exercised jurisdiction over Mr. Khadr's claims after he was transferred. *Id.* The military appellate court held that it lacked subject matter jurisdiction over Mr. Khadr's case, and the D.C. Circuit did not determine whether it had jurisdiction, choosing to instead resolve the case on waiver. *Id.* The Court is therefore not persuaded that Mr. al-Tamir could continue to seek relief in the United States after he is transferred. Additionally, even if there were a mechanism for relief, Mr. al-Tamir could still lose access to it if he were to die in an Iraqi prison for any of the reasons that he fears. *See Johnson v. Missouri*, 143 S. Ct. 417, 418 (Jackson, J., dissenting) ("As for irreparable harm, [Mr.] Johnson's execution irrevocably mooted our consideration of his due process claim . . . .").

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 31 of 61

Second, Mr. al-Tamir also faces irreparable harm of injury or death if he is transferred to an Iraqi prison. *See* Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 8-9. The government argues that Mr. al-Tamir fails to show a likelihood of irreparable harm that is "certain and great." Opp'n, ECF No. 15 in 25-cv-15 at 45-46 (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). In support, it relies on its determination that Mr. al-Tamir's risks of torture or death if transferred are sufficiently low to allow the transfer to proceed in keeping with U.S. policy guidelines and based on assurances from the Iraqi government. *See* Opp'n, ECF No. 15 in 25-cv-15 at 22-24, 45-46.

The Court acknowledges that deference is owed to the government's determination that a person's transfer satisfies policies regarding assessing the risk of torture. But this determination does not mean that the government has determined Mr. al-Tamir is not at risk of abuse, torture, insufficient medical treatment, or death in an Iraqi prison. It means that, based on numerous factors, the government has assessed that the risk is low enough—it is not "more likely than not" that he will be tortured—that it should proceed with his transfer. Opp'n, ECF No. 15 in 25-cv-15 at 30.

The key question here, though, is whether Mr. al-Tamir is at risk of serious harm if he is transferred, which the record

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

shows he is. First, the government does not deny the concerns about Iraqi prisons raised in the State Department's 2023 country report. *Id.* at 33 (conceding it "contains reports of mistreatment of prisoners in Iraq, but does not draw any legal conclusions and cannot predict the treatment of any specific individual."). Mr. al-Tamir has pointed to more recent reports of abuse, torture, inadequate medical care, and death in Iraqi prisons. *See* Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 5-7; Reply, ECF No. 17 in 25-cv-15.

Second, the government does not explain how the case it cites for rejection of an irreparable harm that was not "great" or "certain" is analogous to Mr. al-Tamir's situation. The government's authority, *Chaplaincy of Full Gospel Churches*, considered a challenge by "current and former Navy chaplains of 'non-liturgical Protestant' faiths" who alleged that "the Navy had unconstitutionally established and maintained a religious quota system for the promotion, assignment, and retention of Navy chaplains" to their disadvantage. 454 F.3d at 293. The D.C. Circuit held that the petitioners did not articulate an injury that was "certain and great" because it was "far too speculative" that the Navy's practice of retaining Catholic chaplains past applicable age limits resulted in the Protestant chaplains' loss of possible promotions. *Id.* at 298. The harm that Mr. al-Tamir fears here—torture, abuse, negligent medical

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 33 of 61

care, or even death in an Iraqi prison—is far greater than a foregone opportunity for a promotion. *Compare Belbacha v. Bush*, 520 F.3d 452, 459 (D.C. Cir. 2008) (noting the "seriousness of the harm [Mr. Belbacha] claims to face, namely, torture at the hands of a foreign state"); *with Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("At most, the Navy's purported practice reduces Appellants' opportunities for promotion . . . ."). Additionally, the risk that Mr. al-Tamir faces, given conditions in Iraq and factors unique to him, is much less speculative than the doubt as to if Catholic chaplains could not work past age limits, Protestant chaplains could possibly be promoted more easily.

Moreover, the record indicates that the government considered only some of the factors that increase Mr. al-Tamir's risk, ███████████████ ████████████████  ██████████ but not the other reasons for concern, including his Afghan citizenship or his status as someone serving a U.S.-imposed sentence. *Compare* Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 8-9, *with* Opp'n, ECF No. 15 in 25-cv-15 at 7, 21-24.[8] The supplemental letters that Mr. al-Tamir provided further

---

[8] The government's offer in its Sur-Reply filed on January 10, 2025 to provide classified information about its efforts comes too late in these expedited proceedings in view of its representation to the court that Mr. al-Tamir will be transferred no sooner than January 13, 2025.

UNCLASSIFIED//FOR PUBLIC RELEASE

support his concerns that these factors elevate his risk of
harm. *See, e.g.,* Letter from Grazia Careccia, Amnesty
International, ECF No. 17-2 in 25-cv-15 at 1 ("Additionally,
people held on terrorism related offences [sic] routinely report
that factions of [a militia] enter prison facilities to verbally
abuse and threaten prisoners."). Nor does the government address
all of the concerns Mr. al-Tamir raises about his medical
treatment. The government states that it plans to transfer him

███████████████████████████████████████

█████████████████ *see* Opp'n, ECF No. 15 in 25-cv-15 at 17;
but it does not adequately address, for example, concerns that
individuals incarcerated in Iraqi prisons face serious delays in
seeking external hospital care, *see* Mot. for Prelim. Inj., ECF
No. 2 in 25-cv-15 at 6. Again, the question here is not whether
the government's decision to transfer Mr. al-Tamir was in error;
but whether notwithstanding the government's determinations, Mr.
al-Tamir has still shown that he faces a serious risk of
irreparable harm. The Court concludes that he does. As he
describes it, that Mr. al-Tamir "fears returning to Iraq (where
he would be able to see his family) more than he fears staying
at Guantanamo (where he has not been well cared for and may
ultimately die), speaks forcefully to the need for a preliminary
injunction." *Id.* at 11.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 35 of 61

### C. Likelihood of Success on the Merits[9]

This analysis focuses on the claims Mr. al-Tamir raises in his Third Petition because they are the focus of his motions for preliminary injunction. In his Third Petition, Mr. al-Tamir raises four claims: (1) the transfer would violate the Convention Against Torture, the Due Process Clause, and the Geneva Conventions; (2) the government breached his Plea Agreement; (3) transferring Mr. al-Tamir to Iraq is an unlawful treaty transfer and violates his right to counsel; and (4) informing the Iraqi government that Mr. al-Tamir's sentence does not end until 2032 violates due process. Pet., ECF No. 1 in 25-cv-15 at 19–26. Mr. al-Tamir claims that he has '"a substantial likelihood of success on the merits."' Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 7–8.

The government disagrees and argues that Mr. al-Tamir has no chance of success on the merits on the first three claims. *See* Opp'n, ECF No. 15 in 25-cv-15 at 7–9. On the first and third issues, the government's arguments are based on its position that Mr. al-Tamir is afforded no more rights than a law of war

---

[9] In his Third Petition, Mr. al-Tamir seeks to permanently enjoin the government from transferring him to Iraq, but his Motion for Preliminary Injunction only seeks temporary relief while the Court considers his claims. Therefore, the Court does not need to apply a heightened standard here. *Cf. Doe*, 928 F.3d at 7 (citing *Winter*, 555 U.S. at 7) ("The same factors apply when a party seeks a permanent injunction, except the party must show 'actual success' on the merits rather than just a likelihood.")

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 36 of 61

"detainee" at Guantanamo. *See id.* On the second issue, the
government argues the plea agreement does not prevent Mr. al-
Tamir's transfer to Iraq, and therefore, the government has not
breached it. *See id.* at 9. The government also argues that a
preliminary injunction is not necessary to permit Mr. al-Tamir
to challenge a breach of the plea agreement after he is
transferred because he will continue to have access to relief.
*See id.* at 40 (citing *Khadr*, 67 F.4th at 413).

### 1. Due Process and Convention Against Torture

Mr. al-Tamir argues that his transfer would violate the
Convention Against Torture, the Due Process Clause, and the
Geneva Conventions. Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15
at 8-9. He points to reports of torture in Iraqi prisons to
support his argument that he qualifies for such protections, or
at least judicial review of the procedure the government went
through to determine his level of risk. *See* Pet., ECF No. 1 in
25-cv-15 at 19-20; Reply, ECF No. 17 in 25-cv-15 at 6-14.

The government's primary opposition to Mr. al-Tamir is that
the government's decision to transfer him is unreviewable.
Opp'n, ECF No. 15 in 25-cv-15 at 7 ("These decisions are
controlling here and compel the conclusion that Petitioner is
not entitled to an injunction preventing the United States from
transferring him to Iraq based on his allegations of potential
mistreatment."); *see also id.* at 29-34.

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 37 of 61

Generally, the government must have authority in a statute or treaty to extradite someone from U.S. custody to another country's custody. *See Doe*, 928 F.3d at 10 (discussing *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 8–9 (1936)). In some circumstances, the Supreme Court and D.C. Circuit have held that the government has greater discretion to transfer military detainees from U.S. custody to the custody of another country that has an interest in prosecuting the individual for offenses committed there. *See Munaf v. Geren*, 553 U.S. 674 (2008). The government argues that these latter cases render Mr. al-Tamir unable to succeed on the merits of his argument that his transfer violates due process and the Convention Against Torture. *See Opp'n*, ECF No. 15 in 25-cv-15 at 7, 29. Mr. al-Tamir argues these cases are distinguishable, and even if not, do not foreclose his procedural argument. *See* Reply, ECF No. 17 in 25-cv-15 at 6–15. The Court agrees that the authority cited does not dictate the outcome for Mr. al-Tamir's claims.

### a. Judicial Review of Transfers

In *Munaf v. Geren*, the Supreme Court considered two consolidated appeals related to two "American citizens who voluntarily traveled to Iraq and allegedly committed crimes there." 553 U.S. 674 at 679. The two questions before the Court were: (1) whether U.S. courts have jurisdiction over habeas petitions filed on behalf of these American citizens challenging

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 38 of 61

their detention by the Multinational Force-Iraq ("MNF-I") and
(2) if so, whether district courts could enjoin the MNF-I from
transferring the individuals to Iraqi custody. *Id.* On the first
question, the Supreme Court held that federal courts had
jurisdiction under 28 U.S.C. § 2241 because the two individuals
were in "custody by the United States, even if that custody
could be viewed as 'under . . . color of' another authority,
such as MNF-I." *Id.* at 686 (referencing 28 U.S.C. § 2241). On
the second question, the Court held that "the detainees' claims
do not state grounds upon which habeas relief may be granted,
that the habeas petitions should have been promptly dismissed,
and that no injunction should have been entered." *Id.* at 692.
The Court reached these conclusions because it held that both
the petitioners' 'transfer' and 'release' claims would
"interfere with Iraq's sovereign right to 'punish offenses
against its laws committed within its borders.'" *Id.* (quoting
*Wilson v. Girard*, 354 U.S. 524, 529 (1957)).

The following year, the D.C. Circuit considered *Munaf* in
the context of Guantanamo detainees. *Kiyemba v. Obama*, 561 F.3d
509, 511 (D.C. Cir. 2009). The district court had granted
requests for interim relief brought by nine Uighurs who asked
the court to order that the government provide 30 days' notice
prior to transferring them. *Id.* Before reaching the question of
whether this relief was available, the D.C. Circuit rejected the

UNCLASSIFIED//FOR PUBLIC RELEASE

government's argument that it lacked jurisdiction to consider these claims because they are "ancillary" as opposed to "core" habeas issues. *Id.* at 512. The court held that "a potential transfer out of the jurisdiction of the court is a proper subject of statutory habeas relief." *Id.* It then held, however, that the petitioners failed on the merits and reversed the preliminary injunction. *Id.* at 513. The D.C. Circuit said that its "analysis of [petitioners'] claims is controlled by . . . *Munaf*" and that "[u]nder *Munaf* . . . the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee." *Id.* at 514. The D.C. Circuit qualified this ruling, however: "[a]s in *Munaf*, we need not address what rights a detainee might possess in the "more extreme case in which the Executive has determined that a detainee is likely to be tortured but decides to transfer him anyway." *Id.* n.5 (citation omitted). The D.C. Circuit also rejected the petitioners' attempt to distinguish their case from *Munaf* by arguing their transfers violated the Convention Against Torture. *Id.* at 514–15. Finally, the D.C. Circuit held that the detainees could not enjoin their transfer based on an expectation that the receiving country might prosecute or detain them because it "would be effected by the foreign government pursuant to its own laws and not on behalf of the United States." *Id.* at 515 (quotations omitted).

UNCLASSIFIED//FOR PUBLIC RELEASE

Although *Kiyemba* generally supports the government's arguments, there are some key distinctions between the detainees in that case and Mr. al-Tamir's situation. First, the individuals in *Kiyemba* were not being transferred to serve a prison sentence that had been imposed on them by an MCA proceeding. Second, even though Mr. al-Tamir's transfer means he would serve his sentence under Iraqi law, he would still arguably be imprisoned on behalf of the United States. Third, the D.C. Circuit later distinguished *Kiyemba*, which involved detainees who had "no cognizable interest against being moved from Guantanamo to a foreign country," from a case in which "the transfer centrally implicate[d] [the petitioner's] interest in not being forcibly moved" to another country, akin to extradition. *Doe*, 928 F.3d at 18. Even though Mr. al-Tamir is clearly not a U.S. citizen, he may still have an interest in where he serves his U.S. prison sentence.

The D.C. Circuit later considered the case of Mr. Omar, who was one of the petitioners in *Munaf*, again in *Omar v. McHugh*, 646 F.3d 13 (D.C. Cir. 2011). In this case, Mr. Omar argued that the Foreign Affairs Reform and Restructuring Act of 1998 ("FARR Act") "[gave] him a right to judicial review of conditions in the receiving country before he may be transferred." *Id.* at 15. He also argued that "he [was] entitled under the Constitution's habeas corpus guarantee—either by itself or in conjunction with

the Due Process Clause or the FARR Act—to judicial review of
conditions in the receiving country." *Id.* The D.C. Circuit
rejected both arguments based on *Munaf* and *Kiyemba*. *Id.*

Years later, the D.C. Circuit again considered whether an
individual who was detained by the military could be transferred
to another country without review of their status or claims. *See*
*Doe*, 928 F.3d at 3-5. Mr. Doe, a U.S. citizen, was detained in
Iraq under suspicion of belonging to the Islamic State in Iraq
and the Levant ("ISIL"). The government planned to transfer him
to Iraqi authorities. Mr. Doe objected to the government's
"forcible transfer" and sought to enjoin the transfer to a
certain country and to require the government to provide notice
before a transfer. *See id.* The district court entered
injunctions, and the D.C. Circuit upheld them, affirming that
all the injunction factors were met. *See id.*[10]

In *Doe*, the D.C. Circuit rejected the government's argument
for a broad reading of *Munaf* that would give the government
authority to "pick up" any U.S. citizen who voluntarily leaves
the United States and "deliver" them to any foreign country that
has a "legitimate sovereign interest." *Id.* at 11 (internal
quotations omitted). It considered *Munaf* in light of another

---

[10] The D.C. Circuit held that Mr. Doe "succeeded" on the merits
for one of his claims, as required for a permanent injunction.
*Doe*, 928 F.3d at 8.

UNCLASSIFIED//FOR PUBLIC RELEASE

Supreme Court opinion, *Valentine*, which held that the government generally needed a treaty or statute to extradite a U.S. citizen to another country. *See id.* at 10-14. It understood the Supreme Court to distinguish cases in which the government extradites an individual from the United States, *see Valentine v. United States*, 299 U.S. 5 (1936), from those in which the government transfers someone who '"commit[s] crimes within a sovereign's territory to that sovereign's government for prosecution."' *Id.* at 10 (quoting *Munaf*, 553 U.S. at 699-700). As such, it held that *Munaf* stands for the proposition that the government may transfer an individual who is already in the sovereign's territory to the authority of that sovereign. *See id.* at 11-12. Therefore, *Munaf*, *Kiyemba*, and *Omar* do not necessarily mean that someone in Mr. al-Tamir's position is not entitled to have a court review their challenge to a government transfer decision.

### b. Mr. al-Tamir's Claims

First, the Court concludes that Mr. al-Tamir is unlikely to prevail on a claim under the Convention Against Torture because the D.C. Circuit has held that a challenge to a final removal order in the immigration context is the only way such a claim can be raised. *See Kiyemba*, 561 F.3d at 514-15 (*citing* 28 U.S.C. § 1252(a)(4)) ('"notwithstanding any other provision of law ... including section 2241 of Title 28, or any other habeas corpus provision, ... a petition for review [of an order of removal]

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 43 of 61

shall be the sole and exclusive means for judicial review of any cause or claim' arising under the Convention.") (alterations in original)); *see also* Opp'n, ECF No. 15 in 25-cv-15 at 34 n.12.

That said, for the reasons discussed below, the Court concludes that Mr. al-Tamir has a substantial likelihood of success on certain of his other arguments. First, the question of whether the government lacks authority to transfer him without his consent is discussed below. *Infra* Part III.C.3.

Second, the Court agrees with Mr. al-Tamir that the reasons courts did not permit judicial review of a transfer decision in *Munaf*, *Kiyemba*, and *Omar* do not apply in his case. As Mr. al-Tamir points out, *Kiyemba* and *Omar* are based on *Munaf*, which was concerned about 'interfere[nce] with [the country's] sovereign right to punish offenses against its laws committed within its borders." *Munaf*, 553 U.S. at 692 (quotation omitted). As Mr. al-Tamir points out, he "is being sent to Iraq not because Iraq is seeking him for prosecution but because the United States wants to have him serve a United States sentence there." Reply, ECF No. 17 in 25-cv-15 at 7.[11] The government now highlights how Mr. al-Tamir could face prosecution in Iraq for offenses, but the

---

[11] Both parties discuss how Mr. al-Tamir could face prosecution in Iraq for another alleged criminal offense, but the government has not asserted that this is why it plans to transfer Mr. al-Tamir to Iraq. Instead, it has considered this as a risk that could impact him as he serves his sentence there for a United States offense.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

essence of Mr. al-Tamir's claim is that the government is transferring him to serve his U.S.-prison sentence in Iraq. *See* Sur-Reply, ECF No. 19 in 25-cv-15 at 7. Moreover, Ms. Hensler, Mr. al-Tamir's former counsel, represented that when the government informed her of Mr. al-Tamir's transfer decision and she raised the concern that he could face additional prosecution, the government "dismissed the concern, saying that the Iraqis 'didn't seem interested' in pursuing that case . . . ." Pet., ECF No. 1 in 25-cv-15 ¶ 87 (citing Hensler Decl., ECF No. 1-3 at 10). Therefore, it does not appear that this is a situation where the government's predominant interest in a transfer is to ensure that someone accused of committing offenses in another country is subject to the jurisdiction of that country.

Third, Mr. al-Tamir has shown a substantial likelihood of success on some, but not all, of his procedural claims. Mr. al-Tamir claims that the government was required to perform a Convention Against Torture analysis before deciding to transfer him, but he cites no authority for this. *See* Reply, ECF No. 17 in 25-cv-15 at 12. The government cites to the 2016 National Defense Authorization Act ("2016 NDAA") as the basis of its notification requirements, which do not include a Convention Against Torture analysis. *See* Sur-Reply, ECF No. 19 in 25-cv-15 at 8.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS   Document 198 *SEALED*   Filed 01/11/25   Page 45 of 61

The government provides a declaration from the Ambassador at Large and Coordinator for Counterterrorism at the State Department that describes the process the government went through to make its transfer decision. *See* Richard Decl., Ex. 1, ECF No. 15-1 in 25-cv-15. But the government's assertion that it does not need to provide documentation pertaining to any of these processes because "such information has never been finally required by any court in the detainee context" again depends on a presumption that Mr. al-Tamir has no greater procedural rights than a person who is detained until the end of hostilities. *Id.* at 10. Moreover, the government's own arguments rely on it having conducted an analysis to determine that Mr. al-Tamir's transfer complied with its "longstanding humane treatment policy," which means it made findings that it was **not** more likely than not that he would be tortured. *See* Opp'n, ECF No. 15 in 25-cv-15 at 30. Mr. al-Tamir has made a viable argument that he is at least entitled to discovery of the analysis justifying the government's determination.

For these reasons, the Court concludes that Mr. al-Tamir has not shown a substantial likelihood of success on the merits of a Convention Against Torture claim, substantively or procedurally, but that he has met this standard for his due process claims related to the government's transfer decision.

UNCLASSIFIED//FOR PUBLIC RELEASE

### 2. Breach of Plea Agreement

Mr. al-Tamir's second claim is that the government's decision to transfer him to Iraq is an unconstitutional breach of his plea agreement. Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 9; Pet., ECF No. 1 in 25-cv-15 at 20-22.[12] He asserts that the government promised in the plea agreement to pursue a transfer to a "third party sovereign nation" and take into account his medical needs when arranging this transfer. Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 9. In response to the government's argument that the Plea Agreement did not bar his transfer to Iraq, Mr. al Tamir argues that, applying principles of contract law but keeping in mind that the plea agreement is part of the criminal law process, the Court must "construe ambiguities against the drafter"; consider the terms in context; and read terms so that terms are not rendered superfluous.

---

[12] Mr. al-Tamir also contends that this plea agreement breach supports his arguments in his Second Petition (17-cv-1928) because it demonstrates that "[t]he military commission is constitutionally deficient because it does not have any mechanism for Mr. al-Tamir to challenge the breach in the tribunal." Mot. for Prelim. Inj., ECF No. 183 in 17-cv-1928 at 9. He asserts that "[u]nlike a federal court that maintains authority to oversee the execution of the sentence imposed and entertain a motion to remedy prosecutorial breach, the military commission has no way for a defendant like Mr. al-Tamir to seek relief." *Id.* Because this is not the focus of his motion for preliminary injunction, the Court will not presently evaluate the impact of an alleged breach on his claims in his Second Petition.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

Reply, ECF No. 17 in 25-cv-15 at 16–18. Pursuant to these principles, Mr. al-Tamir argues that the Court must read "third-party sovereign nation" to exclude Iraq. *Id.*

Mr. al-Tamir also claims that he relied on the government's promises "when he entered his guilty plea in 2022, when he debriefed with federal agents in May 2024, and when he went forward with sentencing rather than withdrawing his plea in June 2024." Pet., ECF No. 1 in 25-cv-15 at 21. Consequently, he argues that the government "waived its right to assert a different interpretation of the agreement after he relied on it." Reply, ECF No. 17 in 25-cv-15 at 20 (citing no authority). According to Mr. al-Tamir, if his counsel was mistaken and the agreement did not exclude Iraq, he could have a claim for ineffective assistance of counsel. *See id.* at 22.

Mr. Tamir also questions the government's failure to identify a suitable third-party country in the two years between when he entered his plea and was sentenced evidence that it "has not exercised good faith in its efforts to uphold this promise." *Id.* Finally, Mr. al-Tamir claims that requiring him to serve his sentence in "unconstitutional conditions," those that could violate the Eighth Amendment, would violate his plea agreement because there is an implicit understanding that a sentence will be constitutional. Reply, ECF No. 17 in 25-cv-15 at 22-23.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

The government responds that Mr. al-Tamir cannot succeed on the merits because the government did not breach the Plea Agreement. *See* Opp'n, ECF No. 15 in 25-cv-15 at 36–43. It does not dispute the contract principles that Mr. al-Tamir cites, but argues that even if the provision "third party sovereign nation" were meant to exclude Iraq, the government has not breached its agreement by deciding to transfer him to Iraq anyway. *See* Reply, ECF No. 19 in 25-cv-15 at 11–12. Even if Mr. al-Tamir's breach of contract claim had merit, the government argues that it would not warrant an injunction because he would continue to have an avenue to challenge it after he is transferred. *See* Opp'n, ECF No. 15 in 25-cv-15 at 36–43. Before addressing the other issues, the Court rejects the government's last argument that *Khadr* shows Mr. al-Tamir would be able to challenge his plea agreement after he is transferred for the same reasons discussed *supra* Part III.B.

### 1. "Third Party Sovereign Nation"

The main question for Mr. al-Tamir's breach argument is whether "third party sovereign nation" should be interpreted to exclude Iraq. Mr. al-Tamir's argument is not, as the government implies, that a failure to transfer Mr. al-Tamir anywhere (besides Iraq) violates the plea agreement; Mr. al-Tamir admits that it is not. *See* Reply, ECF No. 17 in 25-cv-19 at 19 ("He is not demanding that the U.S. resettle him—he asks only that the

48
UNCLASSIFIED//FOR PUBLIC RELEASE

government not send him to Iraq. If the government cannot send him to a third country, he will finish his sentence at Guantanamo."). Therefore, there is no dispute between the parties that a failure to resettle Mr. al-Tamir to another country that is not Iraq does not violate the Plea Agreement.

The question remains whether the agreement allowed for transfer to Iraq. The government asserts that "[b]y its terms, this provision [regarding transfer attempts] does not guarantee [Mr. al-Tamir] would never be repatriated to Iraq, promise that [Mr. al-Tamir] would be transferred, or not, to any particular country . . . ." Opp'n, ECF No. 15 in 25-cv-15 at 38. It claims that discussions between Mr. al-Tamir's counsel and the government are irrelevant because the Plea Agreement made clear that it was the entire agreement between the parties. *See id.* at 38-39.

The government has not disputed Mr. al-Tamir's interpretation, but asserts that it does not matter to the Court's analysis. *See* Sur-Reply, ECF No. 19 in 25-cv-15 at 11. The Court agrees with Mr. al-Tamir, and without opposition from the government, that because he is not a "sovereign nation," the terms "third party sovereign nation" implies that there is another nation, besides the United States, that is also precluded from this provision. *See* Reply, ECF No. 17 in 25-cv-15 at 18.

UNCLASSIFIED//FOR PUBLIC RELEASE

The Court disagrees with the government that even with Mr.
al-Tamir's interpretation, its decision to transfer him to Iraq
does not violate the Plea Agreement. The government does not say
so expressly, but it appears that the government's argument that
the agreement is silent, so the government has the authority to
transfer Mr. al-Tamir wherever it likes. One issue with this
interpretation is that it would render the provision of the plea
agreement superfluous, because what would be the point of Mr.
al-Tamir pleading guilty to charges partly in exchange for the
government's pursuit of efforts to transfer him to a third party
sovereign nation, taking into account his healthcare needs, if
the government could decide not to abide by this provision. *See*
Reply, ECF No. 17 in 25-cv-15 at 17. The language in the Plea
Agreement about the government's failure to secure such a
transfer not being a breach does not mean that the government
retained an ability to transfer him outside of this provision,
but that Mr. al-Tamir would simply not be transferred. *Id.* at
19. The significance of this issue relates to the government's
general transfer authority because the government's position
that it can transfer Mr. al-Tamir to Iraq notwithstanding the
lack of authority for the transfer in the Plea Agreement relies
on an assumption that it has the power to transfer persons in
his position without consent or authority from a statute or
treaty. For all these reasons, the Court concludes that Mr. al-

Tamir has a substantial likelihood on succeeding on his argument
that the government's transfer decision breached his plea
agreement.

### 2. Additional Claims

Mr. al-Tamir raises several other claims to which the
government only partly responds. First, the Court disagrees with
Mr. al-Tamir's assertion that the government breached the
covenant of good faith. *See* Reply, ECF No. 17 in 25-cv-15 at 21.
Mr. al-Tamir points to delays, lack of communication, and lack
of details. *See id.* But his own evidence undermines his
argument. Ms. Hensler described communications where the
government expressed its attempts to find a suitable transfer
country that is similar to descriptions in Ambassador Richard's
declaration. *See* Hensler Decl., Ex. 3, ECF No. 1-3 in 25-cv-15;
Richard Decl., Ex. 1, ECF No. 15-1 in 25-cv-15. The Court agrees
with the government that this record does not show evidence of
bad faith. *See* Sur-Reply, ECF No. 19 in 25-cv-15 at 12.

Mr. al-Tamir's Sixth Amendment claim is more sound because
the record demonstrates that even if the plea agreement does not
prohibit transfers to Iraq, Mr. al-Tamir understood it to do so.
Pet., ECF No. 1 in 25-cv-15 ¶¶ 68-71 (describing how he decided
not to withdraw his plea prior to sentencing based on assurances
that his counsel obtained from the government and conveyed to
Mr. al-Tamir); Reply, ECF No. 17 in 25-cv-15 at 22. The

UNCLASSIFIED//FOR PUBLIC RELEASE

government fails to respond to this claim, which could be deemed a concession. But Mr. al-Tamir only describes this claim in a passing reference and cites to no authority for when the allegations he raises would be a Sixth Amendment violation. *See id.* Therefore, the Court cannot conclude that he has a substantial likelihood of success on the merits at this juncture. Similarly, Mr. al-Tamir claims that forcing him to serve his sentence in conditions that could violate the Eighth Amendment may be a breach of his plea agreement, and the government again fails to refute this argument. But again, Mr. al-Tamir cites no authority and the Court does not on this record conclude that he has a substantial likelihood of success on the merits. *See id.* at 22–23.

### 3. Unlawful Treaty Transfer

Mr. al-Tamir's third claim is that his transfer violates federal law that "governs the transfer of offenders serving a prison sentence between the United States and other countries." Pet., ECF No. 1 in 25-cv-15 (citing 18 U.S.C. § 4100, et seq.); *see also* Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 9 (arguing Mr. al-Tamir's transfer violates 18 U.S.C. § 4107). Under 18 U.S.C. § 4100, "[t]he government has authority to transfer prisoners 'only when a treaty providing for such a transfer is in force.'" Pet., ECF No. 1 in 25-cv-15 at 22 (quoting 18 U.S.C. § 4100(a)).

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

The government concedes that there is no treaty to govern the transfer of "prisoners" with Iraq. *See* Opp'n, ECF No. 15 in 25-cv-15 at 42-43. It argues, however, that the government does not need to have a treaty in order to transfer Mr. al-Tamir. *Id.* at 43. Specifically, the government argues that 18 U.S.C. § 1400 is inapplicable because "the D.C. Circuit has concluded that Respondents' authority to transfer a military detainee—even one convicted of war crimes like [Mr. al-Tamir]—is not dependent on the existence of any such treaty." *Id.* at 9 (citing no authority). But, as Mr. al-Tamir notes, *see* Reply, ECF No. 17 in 25-cv-15 at 23, the government does not point to where the D.C. Circuit recognized authority to transfer "a person convicted of war crimes and currently serving his sentence . . . ." *Id.* Even after Mr. al-Tamir pointed out this issue in his Reply, the government failed to address it in its Sur-Reply; therefore the Court does not find it persuasive.

The government relies on the same cases, *Munaf*, *Kiyemba*, and *Omar*, for the government's authority "to transfer a wartime detainee to Iraq." *Id.* at 43. But, as Mr. al-Tamir points out, this transfer authority rests at least in part on there being no legal distinction between the various ways that there can be "disposition under the law of war" even after someone has gone through MCA proceedings and is serving a U.S.-imposed prison sentence. The Court again notes that neither party cites

UNCLASSIFIED//FOR PUBLIC RELEASE

Case 1:17-cv-01928-EGS    Document 203    Filed 03/12/25    Page 88 of 95
USCA Case #25-5071    Document #2106407    Filed: 03/19/2025    Page 88 of 95

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 54 of 61

authority for their interpretation of Mr. al-Tamir's status, but based on the Court's review of the relevant law and legal arguments, it appears that Mr. al-Tamir has a sufficient likelihood of succeeding in arguing that his status is somehow distinguishable. Reply, ECF No. 17 in 25-cv-15 at 23 (citing *Doe v. Mattis*, 889 F.3d 745, 745 (D.C. Cir. 2018)).

### 4. Sentence Calculation[13]

Mr. al-Tamir's final argument is that his transfer, with the government's ███████████████████████████████

████████████████████████████████

███████████    ████████████████████ Pet., ECF No. 1 in 25-cv-15 at 24. Mr. al-Tamir cites authority for people convicted of federal offenses being entitled to seek credit for time served in detention. *Id.* at 25 (quoting *United States v. Wilson*, 503 U.S. 329, 330 (1992) ("'A defendant convicted of a federal crime [having] a right under 18 U.S.C. § 3585(b) to receive credit for certain time spent in official detention before his sentence begins.'"). He asserts that he is entitled to credit for the time since he was taken into U.S. custody in 2006. *Id.*

Mr. al-Tamir acknowledges that the government may claim he waived his right to seek credit for this time as part of his

---

[13] Mr. al-Tamir discusses this claim only in his motion for preliminary injunction in 25-cv-15, not in 17-cv-1928. *Compare* Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 9 *with* Mot. for Prelim. Inj., ECF No. 183 in 17-cv-1928 at 9.

UNCLASSIFIED//FOR PUBLIC RELEASE

plea agreement. *Id.* at 26. But he asserts that "this waiver does not eliminate the government's independent responsibility to *correctly* calculate his release date under federal law as required by *Wilson*, and it certainly does not authorize the government to unlawfully prolong his sentence." *Id.* (quoting *United States v. Guillen*, 561 F.3d 527, 531 (D.C. Cir. 2009) ("holding that a waiver does not prevent a defendant's claim that his sentence 'is unlawful because it exceeds the statutory maximum.'")). Therefore, Mr. al-Tamir claims that he has "fully served his sentence" and if he is transferred to Iraq, the government "should be required to inform the government of Iraq that he has fully discharged his federal sentence, and he should not be transferred in custody to Iraq." *Id.*

The government responds to this argument in a footnote. *See* Opp'n, ECF No. 15 in 25-cv-15 at 41 n.16. It claims that "[i]n his [P]lea [A]greement, however, Petitioner specifically agreed that the sentence . . . began to run on June 10, 2022." *Id.* (citations omitted). But it does not address any of Mr. al-Tamir's arguments for why that provision of his plea agreement should not be enforced, including *Wilson*, *Guillen*, and Mr. al-Tamir's arguments that the government has an independent obligation to correctly calculate his sentence. *Id.* As previously noted, this Circuit sees the failure to respond to an argument as a concession. *See Hopkins*, 284 F. Supp. 2d at 25

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

(D.D.C. 2003); *but see* Reply, ECF No. 17 in 25-cv-15 (failing to raise the government's lack of argument). It is therefore significant that the government did not adequately counter Mr. al-Tamir's arguments here. The Court concludes, however, there is not enough information in the record to determine how likely it is Mr. al-Tamir would succeed on the merits. Therefore, the Court does not base its conclusion that Mr. al-Tamir showed a substantial likelihood of success on the merits on this claim.

### D. Balance of Equities and Public Interest

Lastly, the Court considers whether the balance of equities weigh in Mr. al-Tamir's favor.

The Court has already explained the harm that would likely befall Mr. al-Tamir if transferred. *Supra* Part III.B. The government claims that Mr. al-Tamir has not shown a likelihood of irreparable harm, but the Court rejected this argument. *Supra* Part III.B; Opp'n, ECF No. 15 in 25-cv-15 at 46 (asserting that, Mr. al-Tamir has "failed to demonstrate that the balance of equities tips in his favor.").

Mr. al-Tamir argues that a preliminary injunction will cause no harm to the government. Mot. for Prelim. Inj., ECF No. 2 in 25-cv-13 at 9. He contends that there is no reason to believe the ███████████████████████████████████ and that the government will still be able to transfer him if he is unsuccessful in this litigation. *Id*. Mr. al-Tamir claims that

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

"[o]n the flip side, the government has an interest in ensuring the transfer complies with the Constitution and international treaties." He asserts that the government's rush to carry out the transfer so quickly "will undermine the government's interest in preserving the rule of law; a delay to protect the status quo . . . causes it no injury at all." *Id.*

Mr. al-Tamir argues that a preliminary injunction will further the public interest given the "widespread domestic and international criticism of the government's actions at Guantanamo Bay for the last two decades." *Id.* He highlights how people detained at Guantanamo have sought to be released for decades, but claims that "the public interest is not served by a government transfer from Guantanamo to some place that is probably even worse." *Id.; see also Huisha-Huisha v. Mayorkas,* 27 F.4th 718, 734 (D.C. Cir. 2022) (quoting *Nken,* 566 U.S. at 436) ("Plus, the Supreme Court has said that the public has a strong interest in 'preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'"). Instead, according to Mr. al-Tamir, the "public is best served by transparency, something that the government's haste obscures." *Id.* Moreover, Mr. al-Tamir contends that the public has a "strong interest in understanding why [he] would take the position" that he would rather remain at Guantanamo than be transferred to an Iraqi prison and "ensuring

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 58 of 61

that his fear is not lightly ignored." *Id.* Therefore, according
to Mr. al-Tamir, a preliminary injunction is necessary so that
the government proceeds "more deliberately and openly." *Id.*

In response, the government focuses on "adverse
consequences to the public interest" including "interfere[nce]
with the United States' ability to take steps consistent with
its view of the Nation's national security interest, including
to responsibly reduce the detainee population at Guantanamo, as
well as to ███████████████████████████████

███████████    ████████████████████████████

███████████████████████████████████████████

Opp'n, ECF No. 15 in 25-cv-15 at 44. It further asserts that
delaying Mr. al-Tamir's transfer would "interfere with the
Executive's ability ███████████████████████

████████████████████████████████████████

*Id.* at 44–45 (alteration & quotations omitted). It claims that
"an injunction would disrupt those arrangements and the United
States' ability to uphold the arrangement would be contingent
upon the outcome of uncertain future litigation to vacate the
transfer injunction." *Id.*

In his Reply, Mr. al-Tamir criticizes the government's
arguments as unsupported and far too vague. *See* Reply, ECF No.
17 in 25-cv-15 at 26. He points out that the government has
"held [Mr. al-Tamir] at Guantanamo for almost 20 years" and

Case 1:17-cv-01928-EGS    Document 203    Filed 03/12/25    Page 93 of 95
USCA Case #25-5071    Document #2106407    Filed: 03/19/2025    Page 93 of 95
UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 59 of 61

asserts that the Court should be skeptical of any claim that all
of a sudden there is a significant need to *immediately* remove
one prisoner from Guantanamo." *Id.* at 26. Further to this point,
he highlights how the government does not assert that it will
close Guantanamo "any time soon." *Id.* at 26-27. Regarding the
United States' diplomatic interests, Mr. al-Tamir contends that
the government has no support for its claim that ███████████

███████████████████████████████████████████████████

███████████████████████████ *Id.* at 27. He claims that
the government does not ████████████████████████████

████████████████████████████████████████ The
government does not respond to these arguments in its Sur-Reply.
*See* Sur-Reply, ECF No. 19 in 25-cv-15.

The Court credits the government's assertion that the
public, and the government, has an interest in responsibly
reducing the population at Guantanamo, maintaining diplomatic
relations with Iraq, and the Executive's ability to engage in
sensitive diplomatic negotiations in general. But the government
has not adequately explained why the temporary delay of Mr. al-
Tamir's transfer while his claims are considered would seriously
undermine these interests. It has not shown that there is a
reason it needs to transfer Mr. al-Tamir now or risk such
significant harm. *See also Doe*, 288 F. Supp. 3d 195, 200 (D.D.C.
2018) ("Absent a showing that the government—for international

UNCLASSIFIED//FOR PUBLIC RELEASE

relations reasons or otherwise—needs to transfer Petitioner *now*, the court does not find that the government's interests outweigh the Petitioner's right to challenge his detention without fear of his transfer to another country.").

In addition to the public interests that Mr. al-Tamir has articulated in his favor—including transparency and understanding why he would rather stay at Guantanamo than be sent to Iraq—Mr. al-Tamir prevails on the balance of equities. *See* Mot. for Prelim. Inj., ECF No. 2 in 25-cv-15 at 9. Here, the irreparable harm that Mr. al-Tamir faces outweighs the government's general interest in positive diplomatic relations with Iraq and the public interest in reducing Guantanamo when there is no indication that it would close in short order if Mr. al-Tamir is transferred immediately instead of in a few months, if Mr. al-Tamir is ultimately unsuccessful on his claims.

On this record, Mr. al-Tamir has shown a risk of irreparable harm if the Court does not grant his temporary relief; a sufficient likelihood of success on the merits of some of his claims; and that the public interest and balance of equities weigh in his favor.

**IV. Conclusion**

For the foregoing reasons, the Court **GRANTS** Mr. al-Tamir's motion for preliminary injunction. Respondents and their officers, agents, servants, employees, attorneys, and all other

UNCLASSIFIED//FOR PUBLIC RELEASE

Case 1:17-cv-01928-EGS    Document 203    Filed 03/12/25    Page 95 of 95
USCA Case #25-5071    Document #2106407    Filed: 03/19/2025    Page 95 of 95

UNCLASSIFIED//FOR PUBLIC RELEASE
Case 1:17-cv-01928-EGS    Document 198 *SEALED*    Filed 01/11/25    Page 61 of 61

persons in active concern or participation with them are **HEREBY**

**ENJOINED** from transferring Mr. al-Tamir to Iraq without his

consent until the pending claims are resolved. An appropriate

Order accompanies this Memorandum Opinion.

The parties shall post a public version of this Memorandum

Opinion on the docket for this case **FORTHWITH** and by no later

than within 7 days of the date of the Order accompanying this

Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**January 11, 2025**